448 P.2d 878

Frank A. EYMAN, Warden, Arizona State Prison, Petitioner,

v.

SUPERIOR COURT of the State of Arizona IN AND FOR the COUNTY OF PINAL, and T. J. Mahoney, a Judge thereof, Respondents;

Kenneth Dell KELLEY, Real Party in Interest.

No. 2 CA–CIV 625.

Court of Appeals of Arizona.

Dec. 23, 1968.

Review Denied March 4, 1969.

Gary K. Nelson, Atty. Gen., Thomas M. Tuggle, Asst. Atty. Gen., for petitioner.

Stanfield, McCarville & Briggs, by Ron L. Briggs, Casa Grande, for real party in interest.

MOLLOY, Judge.

These extraordinary writ proceedings have been instituted in this court to prevent the issuance of a writ of habeas corpus by the respondent-court. The appropriateness of appellate intervention by extraordinary writ is indicated by the cases of State v. Court of Appeals, Division Two, 101 Ariz. 166, 416 P.2d 599 (1966), and Buell v. Superior Court, 96 Ariz. 62, 391 P.2d 919 (1964).

On August 15, 1968, Kenneth Dell Kelley, an inmate of the Arizona State Prison, filed a petition for writ of habeas corpus in the respondent-court, challenging the validity of his conviction of first-degree murder in 1957. The judgment of conviction was entered upon Kelley's plea of guilty.

The petition filed makes various allegations pertaining to prolonged interrogation, and failure to appoint counsel, to warn of Fifth Amendment rights and to notify the defendant's parents of a juvenile hearing. The petition does not, however, allege that the plea of guilty was involuntary or that the petitioner was not actually guilty of the crime of which he was convicted. See Application of Buccheri, 6 Ariz.App. 196, 431 P.2d 91 (1967).

The petitioner contended that the superior court " * * * lacked jurisdiction to find him guilty * * * " for the reason that the juvenile court hearing, at which it was decided not to suspend criminal prosecution, did not comport with the requirements enunciated in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), and Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966).

A full hearing was held in superior court at the conclusion of which the court determined that Kelley was entitled to the relief sought and that a writ of habeas corpus should issue releasing him from custody.

The court, upon request, made findings of fact and conclusions of law. It found, inter alia, the following. On January 11, 1957, the petitioner and four other juveniles were arrested by a Highway Patrolman based on a juvenile complaint from California. At the time of arrest, Kelley was sixteen years old. The five juveniles were taken to the Pinal County Jail and placed in juvenile cells at the jail. After three days' detention there, they were transferred to the Maricopa County jail where they were individually questioned about the death of one Al Jennings. Kelley made a "confession" about one and a half hours after the questioning commenced but the interrogation continued several hours thereafter. His request, during this interrogation, to see his parents and an attorney were denied. Near the conclusion of the interrogation, in the presence of a juvenile probation officer, a representative of the county attorney's office, and a deputy sheriff, Kelley's statement was taken by a stenographer. The following day, Kelley and the other juveniles were taken to the "scene of the crime" near Gila Bend to reenact the crime. They were accompanied by a deputy county attorney, juvenile officers and sheriff's deputies. At no time were the juveniles advised of their constitutional rights, in particular, their right to counsel either retained or appointed.

Kelley's mother received no formal notice of the juvenile hearing. She learned of the date of said hearing through her own inquiries, whereupon she went to Phoenix on the date set for hearing. She was not advised of her right or her son's right to be represented by counsel at the hearing nor that counsel would be appointed if they were unable to afford counsel. On the morning of January 22, 1957, Kelley's mother saw her son in the juvenile judge's courtroom a few minutes before he entered the judge's chambers for his hearing. When Kelley was told by an officer in the courtroom to proceed to the judge's chambers, his mother asked if she could go with him and was told her presence

8

was not necessary, that she should stay in the courtroom.

At the juvenile hearing in chambers, the juvenile judge reviewed Kelley's case file, asked him certain questions, and told him he would be remanded for trial as an adult. No testimony was given by sworn witnesses. On the afternoon of the hearing, a Tucson attorney who was in Phoenix at the time received a message from his office to attend Kelley's juvenile hearing. He arrived at the juvenile court sometime after 5 p. m., and sat in the back of the courtroom. The juvenile judge came out of chambers, ascended the bench, and stated in open court that three of the juveniles would be tried as adults in the superior court and that two would remain under the jurisdiction of the juvenile court.

The Tucson attorney was retained to represent Kelley and he informed the county attorney's office of said fact. The following morning, the petitioner was taken to Buckeye, Arizona, to appear before the justice of the peace. The justice of the peace did not have any formal, written, remand order. Kelley's retained counsel was not notified of this appearance and was not present at the time the petitioner waived a preliminary hearing. On January 28, 1957, the Maricopa County Attorney filed an information accusing Kelley and two others of first-degree murder. Kelley entered a plea of not guilty, and thereafter, on the advice of counsel, withdrew his not guilty plea and entered a plea of guilty. Counsel was present at the time, and had advised entry of the guilty plea believing that it would preclude the possibility of a death sentence. On June 3, 1957, Kelley was adjudged guilty and sentenced to life imprisonment. In March, 1967, his life sentence was commuted to thirty-four years.

■ The trial court concluded that, on the basis of these facts, the petitioner had been convicted in violation of constitutional rights and was entitled to his liberty. The trial court, in rendering its judgment,

relied upon *Gault, Kent,* Application of Billie, 103 Ariz. 16, 436 P.2d 130 (1968), and Steinhauer v. State, 206 So.2d 25 (Fla.App., 1968). Although we must accept the trial court's findings of fact, we are not bound by its conclusions of law.

In Application of Billie, the *Gault* decision was given retroactive application to a juvenile hearing which resulted in a commitment to an institution for juvenile offenders. Our Supreme Court stated therein:

"We conclude, therefore, that since the Supreme Court determined that the same protection of due process afforded adults under the Fourteenth Amendment applies to children in juvenile court proceedings, that Court intended to achieve the same retrospective effect in cases of all children whose *delinquency adjudication and commitment* had been accomplished without regard to compliance with the rules established in *Gault.*" (Textual emphasis added)

436 P.2d 136.

We are not here considering the petition of one committed to an institution without advice or assistance of counsel. We, therefore, do not consider *Billie* controlling. *Steinhauer* would appear to support the conclusion reached by the trial court. The question there presented was whether a sixteen-year-old boy was entitled to counsel in the juvenile court at a hearing where *he* waived the jurisdiction of that court. The court stated:

"We interpret what was said in Gault and Kent, when read together, to mean that the basic requirements of the due process clause of the Fourteenth Amendment require assistance of counsel whether it results in a transfer order or a commitment order. * * *

"The basis of the Gault decision is that unless counsel was tendered to the juvenile, subsequent proceedings are not in accord with due process of law. Therefore, we feel that the ruling in

Gault must apply to cases both prospectively and retroactively."

206 So.2d 27–28.

The *Steinhauer* decision is not directly apposite in that Florida's statutory scheme of waiver by the juvenile, of juvenile court jurisdiction,[1] differs from ours; in ours, there is no provision for waiver of jurisdiction by the juvenile.

Other jurisdictions which have considered the application of *Gault* to a "waiver-type" hearing have declined to apply *Gault* retroactively. In re Harris, 67 Cal.2d 876, 64 Cal.Rptr. 319, 434 P.2d 615 (1967); Halstead v. State, 4 Md.App. 121, 241 A.2d 439 (1968); State v. Hance, 2 Md.App. 162, 233 A.2d 326 (1967); Cradle v. Peyton, 208 Va. 243, 156 S.E.2d 874 (1967). See also United States v. Wilkerson, 262 F.Supp. 596 (D.C.D.C. 1967), cert. denied, 390 U.S. 1045, 88 S.Ct. 1641, 20 L.Ed.2d 308, and Smith v. Commonwealth, 412 S.W.2d 256 (Ky.1967), pre-*Gault* decisions which decline to apply *Kent,* supra, retroactively.

Chief Justice Traynor, speaking for the California Supreme Court in In re Harris, supra, stated:

"Retroactive application of *Kent* would 'seriously disrupt' the administration of justice. (Johnson v. State of New Jersey (1966) 384 U.S. 719, 731, 86 S.Ct. 1772, 16 L.Ed.2d 882.) Judgments of conviction entered following waiver of juvenile court jurisdiction and final before *Gault* was decided ' "threaten to be of significant quantity" '. [citation omitted] Moreover, many of the defendants convicted after remand for criminal proceedings have become adults and are no longer subject to juvenile court jurisdiction. If, upon collateral attack, a court determined that the waiver of juvenile court jurisdiction was proper when made, the judgment would

stand. If the juvenile court should have retained jurisdiction, however, the judgment would be vacated and the defendant, by reason of age, would no longer be triable in the juvenile court. Although remand to the juvenile court would be the proper remedy if the error were still subject to timely and effective correction on direct attack (see *Kent* at p. 565 of 383 U.S., 86 S.Ct. 1045), we reject the' invitation to compound the speculation and the risks it would entail by retroactive application on collateral attack [citation omitted].

"Moreover, the waiver of juvenile court jurisdiction has always been subject to review in subsequent proceedings in which the defendant was represented by, counsel. [citations omitted] Only in those cases in which he could have induced the juvenile court to exercise its. discretion differently might counsel have affected the result. Finally, since a defendant has always had the right to counsel in the criminal proceedings, denials of that right in the juvenile courts have not resulted in convicting the innocent."

64 Cal.Rptr. 321–322.

The Supreme Court of Appeals of Virginia, in Cradle v. Peyton, supra, was of the opinion that the *Gault* holding did not control its decision of the case before it because " * * * of the significant difference between a confinement order and a certification order." 156 S.E.2d 876. It stated, however, that, even if the *Gault* decision should be interpreted as making no distinction between confinement orders and certification orders, application of the criteria enunciated by the United States Supreme Court for determining whether a decision should be given retroactive effect militated against retroactively in the "certification" situation. These

1. Section 39.02 of the Florida Statutes (1963), F.S.A., defining the jurisdiction of the Juvenile Court, provides for transfer to "adult" court in two instances: (1) if the judge deems that the child should be transferred, or, (2) if the child so demands, prior to, or at the commencement of, the juvenile court hearing.

criteria are: (a) the purpose to be served by the new standards, (b) the extent of the reliance by law-enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retro-active application of the new standards. Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966); Link-letter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). The Virginia court pointed out that the *Gault* rules have the purpose of promoting full and fair hearings, and it was of the opinion that in the vast majority of juvenile cases con-ducted in the absence of counsel, proceed-ings had been scrupulously fair and with-out prejudice to the accused. As to the second criterion, the court found that Vir-ginia had assumed for many years prior to the *Gault* decision that juvenile laws, reflecting the *"parens patriae"* concept of juvenile justice, were constitutionally ade-quate. The court stated:

> "The *Gault* decision requires a change in this concept of juvenile proceedings as non-criminal, a change from pro-cedures (however inadequate to meet constitutional tests as now understood) that were founded on honest concern for the welfare of the child. * * * In view of the justifiable reliance on the old system by the states and their law enforcement authorities, we believe pub-lic interest dictates that the change be prospective only."

156 S.E.2d 878–879.

Application of the last criterion led to the conclusion that retroactivity would have a devastating impact on the administration of criminal law:

> "Every state would be required to void the conviction of every juvenile who was not advised of his right to be repre-sented in juvenile court proceedings by retained counsel or, if unable to afford counsel, by court-appointed counsel. Al-ready crowded court calendars would be further burdened by habeas corpus pro-ceedings and, where habeas corpus is successful, by retrials. Inquiry would be handicapped by the unavailability of witnesses, by dim memories, and by the inadequacy or unavailability of juvenile court records."[2]

156 S.E.2d 879.

While the damage to society postulated by the Virginia court to result from retro-activity is directed both at juvenile com-mitment proceedings, as in *Billie,* and at *Kent*-type waiver hearings, we believe it clear that the greater damage will be in the latter type case. As our Supreme Court pointed out in *Billie* (436 P.2d 136), seldom are male juvenile offenders detained in Arizona juvenile institutions more than six months or beyond their eighteenth birth-day. Much of the argument in the *Cradle* opinion loses impact in such a setting, but takes on poignancy in a murder convic-tion such as this.

The Maryland court, in State v. Hance, supra, pointed out that, although *Gault* is clearly a constitutional decision, it is limit-ed to proceedings which determine juvenile delinquency. The Maryland court was un-sure as to whether *Kent* and *Gault* together establish constitutional principles applicable to waiver of jurisdiction proceedings.[3]

---

2. In a footnote, the court pointed out that records kept by juvenile courts are not comparable to those of courts of record and that juvenile courts are authorized to destroy the files, papers and records connected with any case after the juvenile has attained age twenty-one or the period of five years had elapsed since disposition of the case.

3. The California Supreme Court in In re Harris, 67 Cal.2d 876, 64 Cal.Rptr. 319, 321, was of the opinion that *Kent* is "now of constitutional dimension." Accord, State v. Yoss, 10 Ohio App.2d 47, 225 N.E.2d 275 (1967); contra, State v. Acuna, 78 N.M. 119, 428 P.2d 658 (1967).

The court, however, notwithstanding the assumption that these cases collectively articulated the proposition that the Federal Constitution requires that counsel be afforded to indigent juveniles at waiver hearings, held that such a requirement should be given prospective application only.

■ We are in accord with the views expressed by these three appellate courts. Assuming, without deciding, that the *Gault* principles are equally applicable to waiver-type hearings, we would accord only prospective operation to such a rule. Retroactive application of the *Gault* principles to delinquency adjudication hearings does not mandate a like application to waiver hearings. The two hearings are markedly different. As to the former type, the United States Supreme Court, in discussing the right of a juvenile to counsel, said:

> "A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it."

In re Gault, supra, 87 S.Ct. 1448.

We do not believe that a hearing on the question of whether to suspend criminal prosecution as an adult is equated in seriousness with the judicial proceeding which determines guilt or innocence as to a felony charge. Though unquestionably such a hearing is a "critically important" proceeding, Kent v. United States, supra, 86 S.Ct. 1057, the hearing results in no adjudication of guilt. In our view, this distinction is sufficiently fundamental so as to render appropriate a distinction as to the retroactivity of *Gault*.

The Supreme Court of New Mexico, in Neller v. State, 79 N.M. 528, 445 P.2d 949 (1968), accords with the result reached in the California, Maryland and Virginia cases, following a different line of reasoning. It concluded that the failure to furnish counsel for a juvenile in a "waiver of jurisdiction" hearing did not render void all subsequent proceedings in the criminal court.

The court reached this conclusion by comparing the juvenile court proceeding as to suspension of criminal prosecution to a preliminary hearing in "adult" court. Under New Mexico law, the preliminary hearing is a critical stage of a criminal proceeding, requiring that counsel be made available. Nonetheless, the New Mexico decisions hold that an objection to failure to provide counsel at a preliminary hearing is a "defect" which may be waived by failure to timely object. Sanders v. Cox, 74 N.M. 524, 395 P.2d 353 (1964), cert. denied, 379 U.S. 978, 85 S.Ct. 680, 13 L.Ed.2d 569. See also Salazar v. Rodriguez, 371 F.2d 726 (10th Cir. 1967). In *Neller*, supra, the court stated:

> "We would observe that as far as a juvenile is concerned, the juvenile court proceedings * * * are in addition to the hearings that follow—preliminary hearing and thereafter. Upon transfer to the district court, the juvenile is denied nothing by way of hearings and other protections that are accorded adults. If that procedure is sufficient for adults we do not understand that a juvenile has a constitutional right to more. While we can agree that a procedure which results in a child receiving 'the worst of both worlds,' viz., adult and juvenile, is wrong and unsupportable, we see nothing that constitutionally requires that he receive anything more or better than is accorded an adult. In the instant situation, petitioner received all benefits to which he would have been entitled as an adult; *his voluntary plea of guilty after consulting counsel, and no showing of prejudice being made, amounted to a waiver of prior failure to provide counsel at a preliminary hearing.* No reason is apparent for concluding that the failure to

provide counsel in the juvenile court law was not just as effectively waived. The juvenile court law provides for an additional determination not accorded an adult. If at the time of arraignment, complaint had been made that counsel had not been provided in juvenile court, we consider it would possibly have been error for the district court to refuse to remand to the juvenile court for a proper hearing. The same is true concerning an objection to failure to provide counsel at a preliminary hearing. But if no objection is voiced, what reason can be advanced to hold there was no waiver of such defect in juvenile court when it is clear that the same shortcoming in the preliminary hearing as effectively waived? It is our conclusion that, based on the reasoning set forth above, the failure to provide counsel if required at the hearing [certification hearing] * * * was waived. [citation omitted]" (Emphasis added) 445 P.2d 953.

The *Neller* holding was recently followed by the New Mexico Supreme Court in State v. Salazar, 79 N.M. 592, 446 P.2d 644 (1968).

■ In this jurisdiction, any defects in the preliminary examination are likewise subject to the rule of waiver. State v. White, 102 Ariz. 18, 423 P.2d 716 (1967); 17 A.R.S., Rules of Criminal Procedure, Rule 79. Entry of a plea of guilty precludes a defendant from raising any question with regard to his right to a speedy trial or due process of law. State v. Tuggle, 101 Ariz. 216, 418 P.2d 372 (1966). We believe that Kelley, at a time when he was represented by counsel, effectively waived objections to the regularity of the juvenile court proceedings by entering his plea of guilty to the charge against him.

A felony prosecution is within the exclusive jurisdiction of the superior court. Ariz. Const. art. 6, § 14, A.R.S. We have recently held in State v. Superior Court of Pima County, 7 Ariz.App. 170, 436 P.2d 948 (1968), "* * * that the defect in 'jurisdiction' that exists in a criminal prose-

cution against a juvenile defendant by reason of there being no order refusing to suspend criminal prosecution in the juvenile court is a defect relating to jurisdiction over the person," (436 P.2d 953) and failure to interpose a challenge on such grounds, before entry of a plea, constitutes a waiver of such objection. Rule 177, Rules of Criminal Procedure, 17 A.R.S. See also State v. Dehler, 257 Minn. 549, 102 N.W. 2d 696, 89 A.L.R.2d 496 (1960); Harris v. Alvis, Ohio App., 104 N.E.2d 182, 61 Ohio L.Abst. 311 (1950).

■ We are not unmindful of decisions holding that exercise of juvenile court jurisdiction is a "jurisdictional" prerequisite to the criminal court jurisdiction. See, e. g., Robinson v. Kieren, 309 Ky. 171, 216 S.W.2d 925 (1949); Wade v. Warden of State Prison, 145 Me. 120, 73 A.2d 128 (1950); State ex rel., Knutson v. Jackson, 249 Minn. 246, 82 N.W.2d 234 (1957); Wilson v. State, 65 Okl.Cr. 10, 82 P.2d 308 (1938). These decisions, however, were predicated upon violation of the procedure prescribed by statute for transfer by the juvenile court. The record here affirmatively establishes that juvenile referral was had. Whether or not criminal prosecution of a child under the age of eighteen years shall be suspended is left to the discretion of the juvenile court judge. Vigileos v. State, 84 Ariz. 404, 330 P.2d 116 (1958); Ariz.Const. art. 6, § 15. The constitutional provision requires:

"The judges shall hold examinations in chambers for all such children concerning whom proceedings are brought, in advance of any criminal prosecution of such children, and may, in their discretion, suspend criminal prosecution of such children."

The format and scope of such hearing is defined in A.R.S. § 8–229:

"The hearing of any matter involving a child shall be informal, and the judge shall, in chambers, without the intervention of a jury, inquire into the facts, order a medical or mental examination, if advisable, and make a record of the

name, age and place of birth of the child and the names of his parents."

■ After this preliminary inquiry to determine whether the child should be afforded the benefits and protection of the juvenile code, the juvenile may be remanded to stand trial as an adult. Flynn v. Superior Court of Maricopa County, 3 Ariz. App. 354, 414 P.2d 438 (1966). The record of the habeas corpus proceedings below fully establishes that the statutory requisites were complied with, i. e., that an informal hearing was conducted in chambers, that inquiry into the facts was made, and that the juvenile court judge decided that Kelley should be treated as an adult.

■ We fail to see that absence of a "written remand order" invalidates the subsequent criminal proceedings. We find nothing in our statutes that requires such order. In the case of Trujillo v. Cox, 75 N. M. 257, 403 P.2d 696 (1965), a criminal conviction was invalidated because of absence of *proof* that an order of transfer from the juvenile court, as required by statute, was actually made. The court stated:

> "It is not the fact that the district court is in possession of the copy of the order that gives it jurisdiction, but rather the fact that the proper order had been made. To hold that failure to furnish the district court with the order of transfer is fatal to that court's jurisdiction would be to surrender the substance to the shadow. [citation omitted]" 403 P.2d 697.

Just as a writing is not essential to the validity of a judgment in a criminal case, State v. Dowthard, 92 Ariz. 44, 373 P.2d 357 (1962), cert. denied, 372 U.S. 920, 83 S. Ct. 735, 9 L.Ed.2d 726; State v. Chance, 4 Ariz.App. 38, 417 P.2d 551 (1966), cert. denied, 386 U.S. 966, 87 S.Ct. 1048, 18 L. Ed.2d 118, we find it nonessential to the validity of a juvenile court order declining to suspend criminal prosecution. It is the *fact* of its rendition that is controlling. Trujillo v. Cox, supra. At the habeas corpus hearing, Kelley himself testified:

> "Q  Did you know what this juvenile hearing was all about?

> "A  Well, I knew it was to determine whether or not I was going to be tried as an adult or a juvenile.

> \*    \*    \*    \*    \*    \*

> "Q  And could you tell us what just transpired in that court on that day?

> "A  Well, it's kind of hazy, but I remember being taken into her chambers.

> "Q  And who was in chambers?

> "A  I believe there was an Episcopalian minister there and someone from the juvenile department, as near as I can recall.

> \*    \*    \*    \*    \*    \*

> "Q  What transpired, to your recollection, at that hearing?

> "A  Well, the nearest thing that I can remember is somebody read the report of the probation officer or juvenile officer, whatever, and I don't recall whether it was him or whether it was the judge, and then I believe the judge said that she was going to remand us to adult court, and that was it.

> "Q  Did she give a statement to you at that time why she was going to do so?

> "A  She probably did but I don't remember.

> \*    \*    \*    \*    \*    \*

> "Q  What determination was made at that juvenile hearing?

> "A  That I would be bound over to superior court to be tried as an adult."

The attorney who represented Kelley in the criminal proceedings also testified at the habeas corpus hearing to the effect that the juvenile court judge announced, in open court, her decision to decline to suspend criminal prosecution. The petition for a writ of habeas corpus filed below contains the following verified statement:

> "On January 22, 1957, Petitioner was taken before Juvenile Court Judge Lorna Lockwood. At that time Kelley's Mother was present. Judge Lockwood reviewed the case file including the statements previously given by the five youths and the report of the probation officer, and

bound Petitioner over to the Superior Court for trial as an adult."

We believe there was sufficient competent evidence to establish the waiver of juvenile court jurisdiction and the absence of a written order was not fatal to the criminal court jurisdiction.

For the reasons we have stated, we hold that Kelley's conviction is not rendered void by reason of the findings made in the habeas corpus proceeding. Therefore, the petition for extraordinary relief filed herein is granted and a peremptory writ of prohibition shall issue forthwith.

HATHAWAY, C. J., and KRUCKER, J., concur.