Peter SAUNDERS, Petitioner-Appellant,

v.

Frank A. EYMAN, as Warden, Arizona State Prison, et al., Respondents-Appellees.

No. 75–3485.

United States Court of Appeals, Ninth Circuit.

April 18, 1977.

Before ELY and WALLACE, Circuit Judges, and CRARY,* District Judge.

WALLACE, Circuit Judge:

Saunders, an Arizona state prisoner, filed a petition for habeas corpus seeking release from prison. Initially, the district court ordered that a writ should issue on Saunders behalf. The state appealed. We vacated the order and remanded the case for reconsideration in light of our intervening decision in *Harris v. Procunier*, 498 F.2d 576 (9th Cir.) (en banc), *cert. denied*, 419 U.S. 970, 95 S.Ct. 235, 42 L.Ed.2d 186 (1974). On remand the district court correctly determined that because Saunders was represented by retained counsel at the time he pleaded guilty in state court, he was precluded from alleging deprivation of constitutional rights that occurred prior to entry of the plea. *See Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973). The issue on remand was accordingly narrowed to whether the advice of Saunders' counsel to plead guilty was "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970). After a hearing, the district judge found that Saunders had failed to carry his burden of showing that he did not have effective assistance of counsel. He therefore denied the petition. We affirm.

■ In this circuit, it is clearly the law that a habeas petitioner bears the burden of showing that he did not have effective assistance of counsel. *Wright v. Craven*, 412 F.2d 915, 917 (9th Cir. 1969); *Kruchten v. Eyman*, 406 F.2d 304, 312 (9th Cir. 1969), *vacated on other grounds*, 408 U.S. 934, 92 S.Ct. 2853, 33 L.Ed.2d 748 (1972). To sustain that burden the petitioner must show that counsel was so incompetent or inefficient as to make the trial a farce or a mockery of justice. *E.g., United States v.*

Tom Karas, Federal Public Defender, Tom O'Toole, Asst. Federal Public Defender, argued, Phoenix, Ariz., for petitioner-appellant.

Bruce E. Babbitt, Atty. Gen., Phoenix, Ariz., W. Michael Smith, Deputy Atty. Gen., Yuma, Ariz., argued, for respondents-appellees.

* Honorable E. Avery Crary, United States District Judge, Central District of California, sitting by designation.

Martin, 489 F.2d 674, 677 (9th Cir. 1973), cert. denied, 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974); Wright v. Craven, supra, 412 F.2d at 917; Dalrymple v. Wilson, 366 F.2d 183, 185 (9th Cir. 1966); Thomas v. United States, 363 F.2d 849, 851 (9th Cir. 1966); Bouchard v. United States, 344 F.2d 872, 874 (9th Cir. 1965). As stated by Saunders, the issue is "whether counsel was so ineffective that his representation was a 'farce or a mockery of justice' or is 'shocking to the conscience of the court.'"

In an attempt to meet his burden of proof, Saunders presented evidence in the evidentiary hearing that his counsel failed to investigate adequately and to consider crucial aspects of the case, including (1) the circumstances surrounding Saunders' interrogation and confession, (2) possible defenses of diminished capacity or insanity, and (3) his remand from juvenile to adult court. Most of the evidence presented consisted of Saunders' own testimony and necessarily so: many of the key figures in the 1951 state court proceeding—including his counsel and the sheriff—are now dead. In response to this evidence, the district court found that Saunders had failed to prove that counsel did not "consider important aspects of petitioner's case [presumably those listed above] prior to petitioner entering his guilty plea." In short, it appears that the district court disbelieved part or all of Saunders' testimony and found the remaining evidence insufficient to satisfy Saunders' burden of showing defective assistance of counsel.

Saunders agrees that in reviewing this finding—i.e., that Saunders did not prove that defense counsel failed to investigate and consider crucial aspects of Saunders' case—we are bound by the clearly erroneous standard, Rule 52(a), Fed.R.Civ.P. That rule requires that we give "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses."

After thoroughly reviewing this case and considering the district court's appraisal of the credibility of Saunders' testimony, we are not "left with the definite and firm conviction that a mistake has been committed." United States v. U. S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948). Viewing the evidence in a light most favorable to the government as the prevailing party, United States v. Hood, 493 F.2d 677, 680 (9th Cir.), cert. denied, 419 U.S. 852, 95 S.Ct. 94, 42 L.Ed.2d 84 (1974), it appears that Saunders, then 16 years old, shot Fenton in the back of the head twice while the latter was fishing near Yuma, Arizona, in February 1951. After the shooting, Saunders stole his victim's money and truck. He was subsequently apprehended on March 15, 1951, in Phoenix when he attempted to sell the truck. At the time of the apprehension, Saunders admitted killing Fenton, but claimed that the death was accidental. He took officers to the scene and helped locate the body.

A murder complaint was filed in the justice court. Because of his age, Saunders was remanded to the juvenile court. From there, he was remanded to the custody of the justice court. These successive remands occurred on the same day.

On March 17, County Attorney Ingraham interviewed Saunders and advised him of his rights, after which Saunders confessed that the killing was intentional and that the motive was robbery. Saunders also admitted the crime under oath at a Coroner's Inquest held March 19.

Saunders' father was contacted in Labrador. After arriving in Yuma, he retained defense attorney Mansfield on March 27 to represent his son. Mansfield held an extensive interview with the father, reviewing in depth the family background. He also spent considerable time with the County Attorney discussing the facts of the case and a possible plea. Due to his accidental death, Mansfield cannot testify as to the number of contacts he had with Saunders, nor do his files reflect this information. He did negotiate a plea to save his client from a possible death sentence. The change of plea occurred on March 29.

Saunders' first and primary contention is that Mansfield failed to examine the possibility of a coerced confession.

Even from the cold record, Saunders' testimony that his confession was coerced by physical violence appears incredible, or at least suspect, especially when measured against the testimony of former Deputy Sheriff Meador, Judge Nabours (former Chief Deputy County Attorney) and Mr. Ingraham and also against Saunders' own testimony at the 1951 Coroner's Inquest. If there were no coercion, Mansfield's decision not to pursue that aspect of Saunders' case does not evidence incompetency.

■ As noted above, Saunders also alleges that his counsel failed to consider properly the juvenile court remand. We believe that the facts of the remand do not demonstrate such a clear violation of then applicable Arizona law that an attorney's decision not to challenge the remand establishes incompetency. In the first instance, the district court could conclude that there was no obvious failure to comply with the Arizona Juvenile Code. *Compare* 1941 Arizona Session Laws, ch. 80, § 7(a) at p. 159 *with id.* § 7(b) at p. 159 *and id.* § 10 at p. 161–62. In 1951, the Arizona Constitution, art. 6, § 6, granted the juvenile court judge discretion regarding the suspension of criminal proceedings. The judge was not bound by any rigid principles of law. *See Vigileos v. State*, 84 Ariz. 404, 408, 330 P.2d 116 (1958). Also, at the evidentiary hearing before the district court, Judge Nabours testified that in 1951 the juvenile court practice was informal, *see also* 1941 Arizona Session Laws, ch. 80, § 10 at pp. 161–62, and the remand decision was viewed as one totally within the discretion of the juvenile court judge. Further, proceedings of short duration leading to a remand order have been upheld in Arizona, *see Eyman v. Superior Court*, 9 Ariz.App. 6, 448 P.2d 878 (1968), a fact which reinforces our view that Saunders'

1. While our Brother Ely would draw inferences from a newspaper article and the lack of notations in an attorney case file, clearly the district judge need not accept newspaper articles nor must he, as the trier of fact, conclude that an attorney does no more than that about which he makes a note in a file.

1. The standard for judging a claim of denial of effective assistance of counsel has become confusing in our Court. *Compare United States v.*

remand was not clearly open to attack at the time Mansfield entered the case.

■ Regarding counsel's alleged failure to consider properly an insanity defense, the record contains evidence that Saunders' post-arrest conduct was not of the type that would raise any suspicions of his sanity or capacity.

The record contains testimony that Mansfield was then in his early thirties and had been practicing law seven or eight years. Although he did not "do a great deal of criminal law practice," there was testimony, which the district judge could accept, that in this case Mansfield handled the matter "very conscientiously" and that his representation of Saunders was "competent."

■ On these facts,[1] there can be only one conclusion of law. Mansfield's advice to Saunders to plead guilty and seek a life sentence—rather than pursue a jury trial with its greater uncertainty regarding a possible death sentence—was "within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson, supra*, 397 U.S. at 771, 90 S.Ct. at 1449. *See Kruchten v. Eyman, supra*, 406 F.2d at 312–13.

AFFIRMED.

ELY, Circuit Judge (dissenting):

I respectfully dissent.

The facts of this case should lead to no other conclusion except that the advice of the petitioner's counsel was "[not] within the range of competence demanded of attorneys in criminal cases". *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 1449, 25 L.Ed.2d 763 (1970).[1]

*Martin*, 489 F.2d 674, 677 (9th Cir. 1973), *cert. denied*, 417 U.S. 948, 94 S.Ct. 3073, 41 L.Ed.2d 668 (1974) with *Brubaker v. Dickson*, 310 F.2d 30 (9th Cir. 1962). Although Saunders' attorney was constitutionally incompetent under either standard, the *Brubaker* test of competency seems preferable, *i. e.*, "Counsel reasonably likely to render and rendering reasonably effective assistance." *Id.* at 37.

It is first necessary to supplement, to some extent, the facts as set forth by the majority. There is some dispute in the record as to when Saunders, as he attempted to sell Fenton's vehicle, was first apprehended by the police. A newspaper article written at the time reported that Saunders was arrested on March 6, 1951 and questioned for a week thereafter by the Phoenix police. Even assuming that Saunders was not arrested until March 15, however, the evidence is undisputed that he adamantly declared the shooting of Fenton to be accidental. This initial version of the facts was not altered by Saunders until he had been held and continuously questioned by the Yuma sheriff's office for a period of three days. Then, while Saunders yet remained without counsel, he "confessed" under interrogation by a prosecuting attorney. He further obliged the State by testifying at the coroner's inquiry and waiving his right to a preliminary hearing. When Saunders' father ultimately obtained counsel for his son, on March 27, only two days remained until the time scheduled for Saunders' plea.

The record contains substantial evidence corroborating Saunders' claim that his counsel appeared uninterested in investigating the facts surrounding the killing, directing his whole efforts toward a plea bargain leading to the obtaining of a life sentence. Moreover, the record indicates that the attorney had little experience in the handling of criminal cases. The attorney's case file reveals absolutely no investigation of the facts other than an interview with Saunders' father. The record is likewise devoid of any indication that the lawyer considered the defense of reduced capacity and lack of

criminal intent due to Saunders' age and youth, a defense available to Saunders under the then-existing Arizona law.[2] *See Hernandez v. State*, 43 Ariz. 424, 32 P.2d 18 (1934). Finally, there is no evidence indicating that Saunders' counsel considered the consequences of the procedural defects attending Saunders' case. Since Saunders' remand from juvenile to adult court took place only moments after juvenile jurisdiction had attached, it appears undeniable that there was an inexcusable disregard of the statutory requisites of the Arizona Juvenile Code. *See* 1941 Arizona Sessions Laws, ch. 80, §§ 7(b), 10(a). I believe that the majority has confused the holding of *Vigileos v. State*, 84 Ariz. 404, 330 P.2d 116 (1958), that the juvenile court possessed discretion, *after hearing*, to remand a juvenile for trial as an adult, with the separate question of whether the statutory requirements for the remand hearing were satisfied. In *Eyman v. Superior Court*, 9 Ariz. App. 6 (ten years after *Vigileos*), 448 P.2d 878 (1968), the court stated:

> The record of the habeas corpus proceedings below fully establishes that the statutory requisites were complied with, i. e., that an informal hearing was conducted in chambers, *that inquiry into the facts was made*, and that the juvenile court judge decided that Kelley should be treated as an adult. *Id.* at 13, 85, 448 P.2d at 885 (emphasis supplied).

Thus, the Arizona Court of Appeals, in *Eyman*, has suggested that reversal is here required for the wholly rational and explicable reason that Saunders was not afforded the required hearing before it was summarily determined that he would be treated as an adult.[3] Incidentally, I can

---

2. Had Mansfield delayed the change of plea for one additional week, he would have received an answer to critical written inquiries that he had addressed to one Cavanaugh, the principal of the Anderson school. In a letter to Mansfield written March 30, Cavanaugh enclosed detailed adjustment reports regarding the petitioner and stated that he had known Saunders for approximately four years, from 1946 to 1950. He further noted that Saunders had displayed serious behavioral problems while at the Anderson school and that he had been seen by a psychia-

trist. Mr. Cavanaugh concluded his letter by stating that Saunders:

"... seemed typical of a constitutionally psychopathic type of personality. *No doubt you have sought psychiatric advice in respect to this possibility.*" (Emphasis supplied.)

3. Judge Wallace notes first that Saunders relied primarily on his own testimony to support his claim. In response to my original dissent wherein I pointed out the corroboration of Saunders' testimony found in newspaper arti-

hardly conceive a more critical stage of a criminal proceeding against a child than the time of the determination of whether he shall be treated as a juvenile or an adult.

The United States Supreme Court, in a discussion of the *McMann v. Richardson* test regarding competency of counsel in criminal cases, pointedly wrote:

> "Counsel's failure to evaluate properly facts giving rise to a constitutional claim, or his failure properly to inform himself of facts that would have shown the existence of a constitutional claim, might in particular fact situations meet this standard of proof." *Tollett v. Henderson*, 411 U.S. 258, 266–67, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).

The present case is, of course, made more difficult because of the passage of time and the death of the attorney involved, and were I convinced that the record does not reflect the full extent of the effort of defense counsel, I would join the majority. But the flavor of the evidence now available leaves me with the abiding conviction that everyone assumed Saunders to be guilty, and that, accordingly, no reasonably effective legal assistance was given in his behalf.[4] Thus, Saunders was deprived of a most critical constitutional right. This being true, I would reverse so that the District Court might afford to the Arizona courts the opportunity to allow Saunders to plead anew.

cles written at the time and verified for this appeal by their author, Judge Wallace correctly writes that the trial judge was not obliged to accept the statements made in the articles. The gravity of my concern, however, is the evidence, or rather the lack of it, upon which the district judge chose to rely. The testimony of Judge Nabours about the informality of the juvenile remand and the competency of Mansfield (cited by the majority), can only be viewed

fairly when we realize that in 1951 Judge Nabours was the County Attorney responsible for the *prosecution* of Saunders.

4. Judge Nabours' testimony that the juvenile remand procedure was informal, with absolute discretion vested in the remanding judge, can hardly be held to override statutory and court declared procedures to the contrary.