555 P.2d 1132

**The STATE of Arizona, Appellee,**

v.

**Robert Gerald MAYHEW, Appellant.**

**No. 2 CA–CR 669.**

Court of Appeals of Arizona, Division 2.

Sept. 22, 1976.

Bruce E. Babbitt, Atty. Gen. by Heather A. Sigworth, Asst. Atty. Gen., Tucson, for appellee.

Cannon & Schwanbeck by William G. Lane, Tucson, for appellant.

HATHAWAY, Judge.

Appellant appeals from his convictions of armed robbery and assault with a deadly weapon.

The charges leading to appellant's convictions arose out of events transpiring on August 7, 1974, in Tucson, Arizona. Arrangements had been made by undercover officers for a meeting in the parking lot of a shopping center located at Oracle and Rogers Roads in an attempt to purchase approximately 1,000 pounds of marijuana for $75,000. The agents had planned to exhibit the cash to the prospective sellers and make arrangements for the actual purchase and transfer of the marijuana. Between ten and fifteen undercover agents were involved in the "rear guard" phase of the undertaking.

At approximately 9:15 p. m., Sergeants John Sanders and Charles Bunting arrived at the parking lot. Mayhew arrived almost immediately thereafter in a red and white Pontiac automobile driven by co-defendant Steve Doty. After a brief conversation, the agents left to meet with other agents for the purpose of discussing their strategy and obtaining money. They returned approximately 15 minutes later and parked 150 to 200 feet from the red and white Pontiac.

Mayhew left the Pontiac and met Sgt. Sanders at the rear of the officers' vehicle. Sgt. Sanders opened the trunk and revealed the money, whereupon Mayhew pointing a gun at him stating that a "rip-off" was under way, and instructed him to lie down on the pavement.

While Mayhew gathered up the money, a white Pinto automobile approached the agents' car and parked along the driver's side, facing in the opposite direction. The driver of the Pinto pointed a shotgun at Sgt. Bunting, driver of the agents' vehicle, who responded by firing two shots at the Pinto. He fired two additional shots and the Pinto took off in a northerly direction.

As the shooting began, Mayhew moved from the trunk area of the undercover vehicle to a position alongside the left rear bumper. Sgt. Sanders saw him fire one shot toward the front of the agents' car. Mayhew then began running northerly

carrying the money which he dropped at a spot between 6 and 20 feet from the vehicle. Mayhew was unable to get into the fleeing Pinto. Sgt. Sanders fired six shots at Mayhew and then ran to recover the dropped money.

Bunting observed Mayhew running and turned his car around and pursued. Mayhew leveled his weapon at Bunting who was attempting to run Mayhew down. Bunting ultimately got out of his vehicle and shot Mayhew as he attempted to leave. Mayhew's weapon contained 5 live rounds of ammunition and one expended cartridge.

It is first contended on appeal that the trial court erred in refusing to instruct the jury that asportation is an element of the crime of armed robbery, and in its further refusal to instruct on the lesser included offense of attempted armed robbery. Reliance is placed in *People v. Anderson*, 64 Cal.2d 633, 51 Cal.Rptr. 238, 414 P.2d 366 (1966), in support of this position. In particular, appellant emphasizes the following language:

> "In this state, it is settled that a robbery is not completed at the moment the robber obtains possession of the stolen property and that the crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property." 51 Cal.Rptr. at 241, 414 P.2d at 369.

However, appellant should have considered the next paragraph in *Anderson,* which would indicate he has misinterpreted the case. The California Supreme Court continued:

> "Accordingly, if one who has stolen property from the person of another uses force or fear in removing, *or attempting to remove*, the property from the owner's immediate presence, as defendant did here, the crime of robbery has been committed." (Emphasis added) 51 Cal.Rptr. at 241, 414 P.2d at 369.

The California cases relied upon by appellant advert to the continuing nature of

robbery until the robber has escaped. Thus, in *People v. Milan*, 9 Cal.3d 185, 107 Cal.Rptr. 68, 507 P.2d 956 (1973), the court found that the felony-murder rule was properly instructed upon since the crime of robbery " . . . is not complete until the robber has won his way to a place of temporary safety." 107 Cal.Rptr. 74, 507 P.2d 962. In *Milan,* the court cites *People v. Carroll*, 1 Cal.3d 581, 83 Cal.Rptr. 176, 463 P.2d 400 (1970), wherein the defendant had forcibly taken a wallet from his victim and finding it empty, threw it away. The court found, nevertheless, that the robbery and subsequent shooting of the victim constituted one indivisible transaction. The court observed that the nature of the crime of robbery is such that a robber's escape is just as important as obtaining possession of the loot in the first place, and found that the shooting occurred "in the course of commission of the robbery." Thus, the robbery was simply treated as a continuing offense.

A leading California case enunciates the rule that reduction to manual possession is sufficient asportation and there is no requirement that the goods be moved out of the victim's presence. *People v. Beal*, 3 Cal.App.2d 251, 39 P.2d 504 (1934). Accord, *People v. Hall*, 253 Cal.App.2d 1051, 61 Cal.Rptr. 676 (1967); *People v. Quinn*, 77 Cal.App.2d 734, 176 P.2d 404 (1947); *People v. Clark*, 70 Cal.App.2d 132, 160 P. 2d 553 (1945). The rule is summarized in 67 Am.Jur.2d, Robbery, Sec. 11 (1973):

> "Supplementing the taking, as in larceny, there must be an asportation or carrying away of the goods. Severance of the goods from the possession of the owner and absolute control of the property by the taker, *even for an instant,* constitutes an asportation. *Any movement of the property is sufficient,* though it has also been said that the appropriation is a transaction that continues after the perpetrator departs from the place where the property was seized. *The subsequent retention of the property by the taker is not essential.*" (Emphasis added, footnotes omitted).

Our Supreme Court, noting *Beal, Quinn* and *Clark,* concluded that in robbery, the property need not be taken out of the presence of the victim, but need only be taken from his person or in his presence. *State v. Hitchcock,* 87 Ariz. 277, 350 P.2d 681 (1960), cert. den. 365 U.S. 609, 81 S.Ct. 823, 5 L.Ed.2d 821 (1961).

█ █ We find that asportation is a necessary element to robbery and that it was present in this case. Reference is made by both parties to *State v. Soders,* 106 Ariz. 79, 471 P.2d 275 (1970), where our Supreme Court stated:

"Kidnapping and robbery are two distinct crimes. To constitute kidnapping, it is not essential that any personal property be taken. On the other hand, robbery does not require asportation or confinement of the victim which is unnecessary for its commission. The elements of the two offenses are different. One may be committed without the other." 106 Ariz. at 81, 471 P.2d at 277.

Headnote 4 for the case interprets the foregoing language to mean that:

"Robbery does not require asportation or confinement of the victim."

Taken out of context to the court's discussion, it might be interpreted to mean that asportation is not necessary to robbery. We do not so interpret the court's language. The court is simply distinguishing the elements of the two crimes, kidnapping and robbery, and pointing out that the elements are different for each.

The uncontradicted evidence establishes that Mayhew forcibly obtained possession of the money and moved it from 6 to 20 feet. A.R.S. Sec. 13–641 defines robbery as:

"Robbery is the felonious taking of personal property in the possession of another from his person, or immediate presence, and against his will, accomplished by means of force or fear."

The taking as established by the record, falls within the statutory prohibition.

█ As to the court's refusal to instruct on the crime of attempted robbery, a like contention was recently rejected by our Supreme Court in the appeal of Mayhew's co-defendant. See, *State v. Wilson,* 113 Ariz. 363, 555 P.2d 321 (Filed September 14, 1976).

█ Appellant's argument that the assault with a deadly weapon conviction was inextricably bound to the robbery "attempt" and therefore subjected him to double punishment, we find to be without merit. Sufficient evidence established the robbery—appellant was on his way with the goods and then fired in the direction of the police officer. Subsequent conduct on his part included further pointing of a loaded firearm at or in the direction of the police officer. We find that each conviction stands on its own facts. *State v. George,* 108 Ariz. 5, 491 P.2d 838 (1971).

█ Appellant claims that the court erred in allowing the testimony of a police officer characterizing appellant as appearing to be ready to fire at a police officer. We do not agree as the officer's conclusion did not invade the province of the jury. Udall, Law of Evidence, Sec. 22 (1960). *Jeune v. Del E. Webb Const. Co.,* 76 Ariz. 418, 265 P.2d 1076 (1954); *Finn v. J. H. Rose Truck Lines,* 1 Ariz.App. 27, 398 P.2d 935 (1965).

█ Appellant's last two contentions are that (1) the court erred in admitting into evidence a tape recording of police radio transmissions and (2) he was prejudiced by the presence of uniformed guards who entered the courtroom during the opening statement of the prosecutor. Our Supreme Court considered these same contentions in the co-defendant's appeal and found no reversible error. *State v. Wilson,* supra. We therefore reject appellant's contentions.

Affirmed.

HOWARD, C. J., and KRUCKER, J., concur.