641 P.2d 862

**STATE of Arizona, Appellee,**

v.

**Michael Lee RING, Appellant.**

No. 5122.

Supreme Court of Arizona,
En Banc.

Feb. 19, 1982.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, Diane M. Ramsey, Gary A. Fadell, Asst. Attys. Gen., Phoenix, for appellee.

David J. Hossler, John N. Nelson, Yuma, for appellant.

HOLOHAN, Chief Justice.

After a jury trial, appellant Michael Lee Ring was convicted of eleven counts of kidnapping with intent to commit robbery, former A.R.S. § 13-492; ten counts of assault with a deadly weapon, § 13-249; and one count each of grand theft, § 13-663; robbery while armed with a gun, § 13-641; first degree burglary, § 13-302; and first degree murder, § 13-451 *. Appellant was sentenced to life imprisonment on each of the robbery, kidnapping, and assault counts, 5 to 15 years on the burglary count, and 5 to 10 years on the theft count, all sentences to run concurrently.

No timely appeal was filed from these convictions and sentences, but appellant was granted the right to file a delayed appeal pursuant to a petition for post-conviction relief under rule 32, Arizona Rules of Criminal Procedure, 17 A.R.S.

The evidence presented against appellant at trial showed that appellant entered a Safeway Store in Yuma, Arizona, before 3:00 A.M. on Monday, August 28, 1978, by prying open a rooftop skylight. He wore a mask and gloves throughout the robbery and was armed with a loaded handgun. He brought with him a bag containing chains and locks. As the store's employees arrived, appellant successively forced five employees at gunpoint to enter an upstairs compressor room and to secure themselves to pipes with chains locked tightly about their necks. Two more employees arrived later and appellant attempted to direct them to the upstairs room, but one employee, Flora Burks, refused to go. She threw a refuse container at appellant and ran into the main section of the store. Appellant fired at Ms. Burks, striking her in the leg, causing her to fall. Appellant walked up to Ms. Burks where she lay, and shot her again in the lower abdomen. Appellant then made two other employees carry Ms. Burks to the upstairs room, where she was left lying in the middle of the floor.

One of the chained employees, Leora Bohannon, fainted when Ms. Burks' bloodstained body was brought into the room. Ms. Bohannon slumped over and began choking on the tight chain around her neck. The other chained employees pleaded with appellant to help her, but appellant believed

---

* Because the offenses occurred prior to the October 1, 1978 effective date of Arizona's revised criminal code, appellant was charged under the former criminal code. All citations will be to the former code, unless otherwise indicated.

she was only pretending to choke so that he would release her. He refused to unlock the chain, and Ms. Bohannon subsequently died of asphyxiation due to strangulation.

In the meantime, an employee who had the key to the office safe had arrived. Appellant led her at gunpoint to the safe and had her set the time lock so the safe could be opened in fifteen minutes. During this period he removed cash from other safe compartments, and he also forced two new arrivals to wait near the office. When the safe was opened, the employee removed approximately $6,000.00 in cash and placed the money in a paper bag held by appellant. Appellant forced the employee and three other persons to a back room of the store; he made one person tie two others to posts with dog leashes taken from a store display and tied the other two people himself.

Although appellant had obtained a set of keys to the store from one employee, he was unable to open the back doors. Appellant eventually escaped through the same skylight he had originally entered. From the roof appellant dropped to what he thought was a concrete ledge. In fact it was a foam rubber bumper pad against which trucks backed up while unloading merchandise. Appellant broke through the pad and fell some thirty-five feet, landing in a large "dumpster" trash container, sustaining several cuts, abrasions, and bruises. He was momentarily stunned but soon recovered and returned home.

Meanwhile, one of the employees had managed to untie herself and called the police. When the police arrived they found Ms. Bohannon was dead. One police officer discovered a new bicycle chained in the alleyway next to the store. The police traced a tag on the bicycle through a local merchant who had sold the bicycle a few days earlier to appellant.

At approximately 4:00 P.M. that afternoon, two police officers went to appellant's home, ostensibly to investigate the ownership of the bicycle. Both officers noted that appellant was bleeding from a fresh cut behind his ear and walked with a limp. Appellant told the police that the bicycle had been stolen from him on Friday. However, when they asked how he had been injured, he said he had fallen from the bicycle on Saturday. Appellant agreed to accompany the officers to the police station to discuss the bicycle. After that discussion, appellant was read his *Miranda* rights and agreed to answer some questions about the robbery. His answers raised the officers' suspicions. The officers asked him to participate in a voice lineup. Four witnesses to the robbery identified his voice as that of the robber. Appellant was arrested and detained at the station.

Later that same evening an officer asked appellant if he needed medical treatment for his injuries, which he refused, and informed him that an attorney could be appointed for him the next day. He offered to tell appellant what the charges against him were and what evidence had been found against him. Appellant agreed to listen, and after hearing the evidence he confessed to the crimes. Appellant was advised again of his *Miranda* rights and signed a waiver form; then he related the details of the robbery before several police officers. He repeated the confession on a tape recording immediately afterward; a transcript of that recording was presented in evidence at trial.

Based upon the confession, the officers obtained two search warrants for appellant's home and recovered the clothing and mask worn by the robber, the gun, the bag of money, the keys to the locks used to secure the employees, and other evidence, all of which was presented at trial. Appellant was convicted on 25 counts, as detailed above.

## INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM

Our current standard for weighing claims of ineffective assistance of counsel is whether the proceedings were rendered a sham or mockery of justice. *State v. Moreno*, 128 Ariz. 257, 625 P.2d 320 (1981). We find that counsel's representation here was satisfactory, either under that standard or under the "reasonably competent and effec-

tive" standard adopted by the Ninth Circuit Court of Appeals in *Cooper v. Fitzharris*, 586 F.2d 1325 (9th Cir. 1978), *cert. denied*, 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 793 (1979). Appellant alleges several instances in which his appointed counsel at trial failed to render competent assistance. Initially, he attacks counsel's failure to move to suppress appellant's confession as involuntary and to challenge the validity of the search warrants and evidence seized under them.

We have examined appellant's transcribed confession and find no grounds to challenge its voluntariness. The police reread his *Miranda* rights and determined that he understood them, and appellant stated, "I'm doing it completely on my own will. Nobody has talked me into doing this. I am just volunteering it." The search warrants are also free from defects. Failure to argue frivolous or groundless matters does not make counsel ineffective. *State v. Streett*, 11 Ariz.App. 211, 463 P.2d 106 (1969).

Appellant attempts to distinguish *Saunders v. Eyman*, 600 F.2d 728 (9th Cir. 1977), in which the court found no ineffectiveness from trial counsel's failure to raise an objection to a confession's voluntariness. Appellant asserts that in *Saunders* the reviewing court could itself determine from the record that the confession was voluntary, but that in this case no such record exists. We disagree, because the record here clearly shows the confession to be completely voluntary. Nor does the record show any impropriety in the searches and seizures, so failure to object thereto does not indicate incompetence. *Argo v. United States*, 378 F.2d 301 (9th Cir. 1967), *cert. denied*, 390 U.S. 907, 88 S.Ct. 823, 19 L.Ed.2d 874 (1968).

Appellant next asserts that trial counsel failed to investigate other possible defenses, including insanity and intoxication. While effective counsel must carefully investigate all available defenses, *State v. Lopez*, 3 Ariz.App. 200, 412 P.2d 882 (1966), we find that trial counsel here prop-

erly explored both those defenses. Appellant pleaded not guilty and not guilty by reason of insanity to all charges. Counsel moved to have appellant's mental condition examined before trial, but both doctors reported that the appellant was sane and could assist in his defense. Thus counsel explored the insanity defense and made a strategic decision not to pursue it. Ineffective assistance of counsel claims may not be predicated upon disagreements as to trial strategy. *State v. Rodriguez*, 126 Ariz. 28, 612 P.2d 484 (1980); *State v. Workman*, 123 Ariz. 501, 600 P.2d 1133 (App.1979); *State v. Cufio*, 12 Ariz.App. 461, 471 P.2d 763 (1970); *see also Saunders v. Eyman*, 600 F.2d 728 (9th Cir. 1977).

As for the defense of intoxication, counsel raised that question in cross-examining the state's witnesses, and the jury was properly instructed as to the effect of intoxication on a person's mental state. Current A.R.S. § 13–503; *State v. Laffoon*, 125 Ariz. 484, 610 P.2d 1045 (1980). Moreover, the evidence tended to show that while appellant had been drinking before he entered the store, he was not drunk during the robbery. There was no evidence that he was drinking in the store during the several hours that he was there. This case closely resembles *State v. Kruchten*, 101 Ariz. 186, 196, 417 P.2d 510, 520 (1966), *cert. denied*, 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687 (1967): "Realistically, [appellant's] problem is that [counsel] was too competent to be long misled by the hope that the claim of intoxication had any serious merit."

Appellate counsel contends that defense counsel should have investigated other defenses, but appellate counsel does not suggest any particulars. We believe that our statement in *State v. McCline*, 109 Ariz. 569, 570, 514 P.2d 490, 491 (1973), is equally applicable here: "Our review of the case discloses that counsel did the best he could with a hopeless situation and the facts afforded no meritorious defense."

Appellant maintains that counsel improperly precluded him from taking the stand in his own defense, a right guaran-

teed by Article 2, § 24 of the Arizona Constitution. Nowhere in the record does it appear that appellant wanted to testify, and if at trial he agreed with counsel that it would be strategically unwise for him to testify, he cannot now argue that his waiver of that right constituted reversible error. *State v. Martin*, 102 Ariz. 142, 426 P.2d 639 (1967).

■ Appellant finally contends that trial counsel failed to communicate with him after trial, resulting in appellant's being unaware that counsel had failed to file a timely appeal. In appellant's rule 32 petition for post-conviction relief, he conceded that appellant told his counsel on the day he was sentenced that he did not want to appeal, but contends that his decision was not knowing, voluntary, or intelligent because he was depressed and under the influence of drugs. Appellant maintains in effect that his counsel was ineffective because defense counsel followed appellant's wishes. We disagree. Appellant's counsel vigorously and competently represented appellant and did the best he could under the circumstances.

### DOUBLE PUNISHMENT CLAIMS

Appellant alleges that convicting him of kidnapping as well as robbery and assault charges violated Arizona's double punishment statute, A.R.S. § 13–1641 (now § 13–116). He argues that the robbery was a single act and that any movement or detention of the victims was incidental to the robbery purpose. Both at trial and on appeal, appellant urges this court to abandon the rule established in *State v. Jacobs*, 93 Ariz. 336, 380 P.2d 998 (1963), *app. dismissed, cert. denied*, 375 U.S. 46, 84 S.Ct. 158, 11 L.Ed.2d 108 (1963), and adhered to in *State v. Padilla*, 106 Ariz. 230, 474 P.2d 821 (1970) and ever since, that it is the fact of forcible removal and not the distance involved that establishes the crime of kidnapping. He suggests that the better rule is to be found in *People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225, 43 A.L.R.3d 677 (1969), in which the California Supreme Court held that brief movements

of victims, which are incidental to the commission of the robbery and do not substantially increase the risk of harm above that necessarily present in the robbery itself, do not constitute the asportation required for the crime of kidnapping.

■ In *Padilla, supra*, we expressly declined to follow the California rule, and we have consistently adhered to our position. In fact, in *State v. Pickett*, 121 Ariz. 142, 146, 589 P.2d 16, 20 (1978), we held that no movement was required and that "the essence of the crime of kidnapping ... is ... the unlawful compulsion to stay somewhere or go somewhere against the victim's will," following *State v. Williams*, 111 Ariz. 222, 526 P.2d 1244 (1974). This view is followed by other states as well. *See* Annot., 43 A.L.R.3d 699, § 3 (1972 and 1981 Supp.). We believe that this result necessarily follows from the plain language of A.R.S. § 13–492(A): "A person ... who ... confines ... any individual by any means whatsoever with intent to hold or detain, or who holds or detains any individual ... to commit ... robbery" is guilty of kidnapping. We will not judicially create an exception to the plain statutory wording.

■ Next the multiple convictions are challenged as merged into a single offense. The evidence showed that the theft of the money from the safe satisfied each element of the robbery charge. When those elements are eliminated, the kidnapping charges are supported by the evidence that appellant bound and confined each victim to facilitate the robbery. Thus A.R.S. § 13–1641 was not violated by convicting appellant of both robbery and kidnapping. *See State v. Gordon*, 125 Ariz. 425, 610 P.2d 59 (1980).

The same result is reached when the identical elements test is applied to the murder and burglary charges, *State v. Lujan*, 124 Ariz. 365, 604 P.2d 629 (1979), and the robbery and assault charges, *State v. Blazak*, 110 Ariz. 202, 516 P.2d 575 (1973); *State v. Mayhew*, 27 Ariz.App. 444, 555 P.2d 1132 (1976).

Pursuant to current A.R.S. § 13–4035, we have reviewed the entire record on appeal and find no reversible error. The judgments and sentences imposed are affirmed.

GORDON, V. C. J., and HAYS, CAMERON and FELDMAN, JJ., concur.