NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent*,

*v.*

MICHAEL CRAMER, *Petitioner*.

No. 1 CA-CR 24-0484 PRPC

FILED 04-17-2025

Petition for Review from the Superior Court in Maricopa County
No. CR2020-001790-001
The Honorable Aryeh D. Schwartz, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Robert A. Walsh
*Counsel for Respondent*

Grand Canyon Law Group LLC, Mesa
By Kevin R. Myer
*Counsel for Petitioner*

---

## MEMORANDUM DECISION

Judge Daniel J. Kiley delivered the decision of the Court, in which Presiding Judge Michael S. Catlett and Judge David D. Weinzweig joined.

---

**K I L E Y**, Judge:

¶1        Petitioner Michael Cramer seeks review of the superior court's order dismissing his petition for post-conviction relief ("PCR"). This is Cramer's first PCR petition. We grant review but deny relief.

### FACTS AND PROCEDURAL HISTORY

¶2        H.C. lived with her grandparents for most of her life. In February 2019, then 12-year-old H.C. disclosed to a school employee that Cramer, her grandfather, touched her inappropriately. The school employee called the police. Forensic interviews with H.C. revealed that Cramer had been sexually abusing her since she was six years old.

¶3        H.C. was removed from her grandparents' home and began living with another family member.

¶4        The State charged Cramer with five counts of sexual conduct with a minor, each a Class 2 felony and a dangerous crime against children (DCAC), and one count of furnishing obscene or harmful items to a minor, a Class 4 felony.

¶5        At trial, the State called a number of witnesses, including H.C., her grandmother, the investigating detective, the nurse who performed the sexual assault examination, and forensic interviewers Wendy Dutton and Amy Heil. Heil testified as a "blind expert" about the reasons that child victims may not immediately report sexual abuse. Heil stated that child victims may delay disclosing sexual abuse by a family member because, among other reasons, they "fear" their abusers, they feel "guilt and shame," or they worry that disclosure would "break up the family." On cross-examination, Heil acknowledged that children sometimes make allegations of abuse that are untrue, adding that the "scenarios" in which "malicious, false allegations tend to occur" include when "teenage girls" are "trying to change their living situation."

**¶6** Cramer testified on his own behalf. Asserting that H.C. rebelled against the strict rules that he and his wife imposed in their household, Cramer suggested that H.C. fabricated her allegations to secure her removal from their home. Cramer added that:

> [w]e read a journal that she had left in a bedroom—her bedroom upstairs. We were cleaning it up in there, and we got this journal that she wanted to live somewhere else. And we just found that journal just [*sic*] recently.

Defense counsel had neither disclosed the journal to the State nor sought to offer it as an exhibit at trial.

**¶7** In closing argument, defense counsel argued that H.C. fabricated her accusations because she "desperately want[ed]" to leave her grandparents' home. Citing Heil's testimony that "the areas in which false accusations tend to exist" usually "involv[e] teenage girls who are trying to change their living situations," he argued that H.C. "fits the profile of someone that does make false accusations."

**¶8** The jury found Cramer guilty on all five counts of sexual conduct with a minor and not guilty of furnishing obscene or harmful items to a minor.

**¶9** During the sentencing hearing, both parties referred to the journal that Cramer claimed to have discovered in H.C.'s former bedroom. Referring to Cramer's claim about the journal that "he magically found . . . just a week before he testified," the prosecutor stated, "I submit to you, there was no journal." The prosecutor contended that Cramer lied about finding a journal after he heard Heil testify that "teenage girls" sometimes make "false [sexual abuse] allegations" when they desire to "change their living situation." In response, defense counsel avowed to the court that "there was a journal" that "was given to [him] . . . a few days prior to testimony." Counsel added, "[W]e made a calculated decision that we're not going to use it."

**¶10** The court sentenced Cramer to life in prison with the possibility of release after 35 years on one count of sexual conduct with a minor and consecutive 15-year terms on the remaining counts. In April 2023, this Court affirmed the convictions and sentences on direct appeal. *State v. Cramer*, 1 CA-CR 22-0063, 2023 WL 3067745 at *2, ¶ 9 (Ariz. App. Apr. 25, 2023) (mem. decision).

¶11            Cramer then filed his PCR petition alleging ineffective assistance of counsel ("IAC") based on trial counsel's failure to offer H.C.'s journal as evidence at trial. Quoting certain journal entries that he contended showed "H.C.'s desire to change her living situation," Cramer argued that trial counsel should have used the journal to explain to the jury "why H.C. would fabricate the allegations in this case."

¶12            Noting that an IAC claim cannot be premised on matter of trial strategy merely because it proves unsuccessful, the State argued in response that Cramer's trial counsel "had sound tactical reasons for not seeking to offer this journal into evidence." The State supported its response with an affidavit from Cramer's trial counsel setting forth the considerations that informed his decision not to seek to offer the journal as an exhibit. Among other things, trial counsel stated the journal contained "considerable material" that the State could have used "to bolster its case," including an entry dated March 1, 2019, which, counsel believed, the jury could have interpreted as a reference by H.C. to sexual abuse at Cramer's hands.

¶13            In any event, trial counsel stated, the journal entries in which H.C. recorded her dissatisfaction with her life bear dates after H.C. had already been removed from Cramer's home. "Because [H.C.] was no longer living with [Cramer] when she wrote the entries" expressing unhappiness, trial counsel stated, "I could not have plausibly offered the journal to prove that [H.C.] had falsely accused [Cramer] of sexual misconduct with the objective of living with someone other than him."[1]

¶14            Finally, trial counsel noted that using H.C.'s journal entries to prove that she "suffered mental health issues" could have backfired by allowing the State to offer the "devastating rejoinder" that H.C. struggled with mental health because she had been "sexually abused" throughout her life by "her own grandfather."

¶15            In his reply, Cramer identified a different basis for his IAC claim. While his PCR petition asserted that trial counsel should have offered H.C.'s journal to establish her motive to fabricate allegations against him,

---

[1] The fact that entries in the journal bear dates after H.C. had moved out of Cramer's home raises questions about how Cramer came into possession of the journal in the first place. Although the record discloses no definitive answer, comments by Cramer's counsel suggest that another family member may have obtained the journal from H.C.'s new home and given it to Cramer.

Cramer contended in his reply that trial counsel should have offered H.C.'s journal to prove that she suffered from "mental health issues" so "significant" that her allegations could not be credited. Cramer supported his reply with a letter from attorney and certified criminal law specialist Michael Alarid III, who stated that false allegations are often found in cases "involving adolescent or teenage females with significant mental health issues." According to Alarid, trial counsel "should have elicited" testimony from Heil that false allegations may be made by teenage girls whose perception of "reality" is "impair[ed]" by "serious mental illness," and then "used the journal entries to show" that H.C. "had mental health issues . . . commonly associated with" this type of false allegation.

**¶16**        In its order summarily dismissing Cramer's PCR petition, the court ruled the defense counsel's choice "not to use or attempt to use the journal was a tactical decision," and counsel "had objectively reasonable bases" to support that choice. "The probative value of the journal . . . was speculative," the court found, "[b]ecause the dates of the journal entries at issue indicate that the entries were made after the victim had already permanently left [Cramer's] residence." Further, the court found no prejudice from counsel's failure to offer the journal as evidence of H.C.'s mental health issues because "[e]vidence of the victim's mental health had already been presented" from other witnesses.

**¶17**        Cramer timely filed this petition for review. This Court has jurisdiction pursuant to A.R.S. § 13-4239, and Arizona Rule of Criminal Procedure 33.16.

## DISCUSSION

**¶18**        Cramer contends in his petition for review that the trial court abused its discretion in summarily dismissing his IAC claim without holding an evidentiary hearing.

**¶19**        To prevail on an IAC claim, a defendant must demonstrate that (1) counsel's conduct fell below an objective standard of reasonableness and (2) he was prejudiced thereby. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). In evaluating an IAC claim, the court must begin with the "strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *See State v. Pandeli*, 242 Ariz. 175, 181, ¶ 7 (2017) (quotation omitted).

**¶20**        The trial court must hold an evidentiary hearing on a PCR petition if the petition presents a colorable claim for relief, meaning that the petition's allegations, if true, would probably have resulted in a more

favorable outcome for the defendant. *See State v. Amaral*, 239 Ariz. 217, 220, ¶ 11 (2016) ("The relevant inquiry for determining whether the [defendant] is entitled to an evidentiary hearing is whether he has alleged facts which, if true, would *probably* have changed the verdict or sentence."); *Strickland*, 466 U.S. at 694 (finding that a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different"). If, on the other hand, the court determines that the petition identifies no material issue of fact or law which, if true, would entitle the defendant to post-conviction relief, the court may summarily dismiss the petition. A.R.S. § 13-4236(C); *see also Amaral*, 239 Ariz. at 220, ¶ 12 ("If the alleged facts, assumed to be true, would not provide grounds for relief, the court need not conduct an evidentiary hearing because those facts would not have changed the outcome." (citations omitted)). This Court "will not disturb the superior court's ruling on a PCR petition absent an abuse of discretion or error of law." *State v. Evans*, 252 Ariz. 590, 594, ¶ 7 (App. 2022) (citations omitted). The burden to show such an abuse of discretion rests with the party challenging the ruling. *See State v. Poblete*, 227 Ariz. 537, 538, ¶ 1 (App. 2011).

**¶21**     Cramer contends that the court abused its discretion in summarily dismissing his PCR petition because Alarid's letter establishes that "girls with mental health issues are more likely to fabricate an accusation, and the journal was strong evidence of [H.C.'s] poor mental health." At a minimum, he contends, "[t]here was at least doubt concerning the color of the claim in light of Alarid's opinion," which, in turn, required the court to hold an evidentiary hearing.

**¶22**     In response, the State argues, first, that Cramer waived the arguments supported by Alarid's letter because they were raised for the first time in Cramer's reply to the State's response to the PCR petition.

**¶23**     In his PCR petition, Cramer argued that trial counsel's failure to offer the journal constituted IAC because the journal established H.C.'s motive to fabricate allegations against him. As the State correctly argues, Cramer did not submit Alarid's letter nor argue that the journal evidenced mental health issues commonly associated with false allegations by teenage girls until his reply to the State's response to his PCR petition. By waiting until he filed his reply to argue that the journal showed that H.C. suffered from mental health issues that impaired her perception of reality, thus rendering her allegations incredible, Cramer has waived his argument. *See State v. Lopez*, 223 Ariz. 238, 239-40, ¶¶ 3-7 (App. 2009) (applying waiver doctrine and finding no abuse of discretion in superior court's refusal to address arguments raised for first time in reply to PCR petition)).

¶24        In any event, as the State correctly asserts, Cramer's argument amounts to a disagreement over trial tactics. And because "[e]ven the best criminal defense attorneys would not defend a particular client in the same way," *Strickland*, 466 U.S. at 689 (citation omitted), a disagreement over "strategy decisions cannot support a determination that representation was inadequate." *Pandeli*, 242 Ariz. at 181, ¶ 8 (citation omitted); *see also State v. Ring*, 131 Ariz. 374, 377 (1982) ("Ineffective assistance of counsel claims may not be predicated upon disagreements as to trial strategy." (citations omitted)). "[A]s long as the challenged conduct could have some reasoned basis," a convicted defendant's "[d]isagreements" about his counsel's "trial strategy" is insufficient to establish an IAC claim. *State v. Meeker*, 143 Ariz. 256, 260 (1984) (citations omitted); *see also State v. Bigger*, 251 Ariz. 402, 409, ¶ 15 (2021) ("A defendant must do more than disagree with, or posit alternatives to, counsel's decisions to overcome the presumption of proper action." (cleaned up)).

¶25        Cramer's trial counsel asserted, as a defense at trial, that H.C. deliberately made false allegations against Cramer because she wanted to be removed from his home. The journal could not have bolstered this defense because, as trial counsel pointed out in his affidavit, the relevant journal entries are dated after H.C. had already left Cramer's home. Because the journal did not support Cramer's defense, counsel was not ineffective in failing to offer the journal at trial. *See Ring*, 131 Ariz. at 377 ("Failure to argue frivolous or groundless matters does not make counsel ineffective." (citation omitted)).

¶26        Although Alarid opines that trial counsel should have asserted a different defense, *i.e.*, that H.C.'s allegations were the product of delusions stemming from underlying mental illness, Cramer's trial counsel decided that such a defense could have backfired. As trial counsel indicated in his affidavit, evidence that H.C. suffered from mental illness did nothing to refute the State's allegation that Cramer had sexually abused her for years. On the contrary, a reasonable jury might conclude that H.C. struggled with mental illness *precisely because* she had been subjected to horrific abuse throughout her life at the hands of a close family member.

¶27        Finally, trial counsel expressed concern that had the journal been admitted as an exhibit, the jurors may have interpreted the entry dated March 1, 2019, as a reference to sexual abuse by Cramer. In his petition for review, Cramer does not dispute or otherwise respond to trial counsel's assertions about the potentially damaging effect of the March 1, 2019, journal entry.

¶28        Because trial counsel made a reasoned decision not to offer the journal as an exhibit because its contents would not strengthen the defense position and might well bolster the State's case, counsel's decision not to use the journal is the type of tactical decision that cannot, as a matter of law, support an IAC claim. *See State v. Gerlaugh*, 144 Ariz. 449, 455 (1985) ("Disagreements in trial strategy will not support a claim of ineffective assistance so long as the challenged conduct has some reasoned basis." (citations omitted)); *see also Pandeli*, 242 Ariz. at 182-83, ¶¶ 13-16 (holding that defense counsel was not ineffective by forgoing cross-examination of the State's expert for fear that "a cross-examination would give the expert a chance to inflict greater damage," since defense counsel "clearly had, at a minimum, some reasoned basis" for that decision (cleaned up)).

¶29        In dismissing Cramer's PCR petition, the court found that Cramer failed to establish prejudice from the failure to offer the journal as proof of H.C.'s mental illness. Noting that other witnesses had testified that H.C. suffered from depression and engaged in self-harming behavior, the court held "[w]hether the jury would have reached different verdicts" if the journal had been admitted in evidence "is, at best, speculative" since "the jury had already been presented with evidence of the victim's mental health" through the testimony of other witnesses.[2] Although Cramer asserts, in a conclusory manner, "that there was a reasonable probability" that the admission of the journal "would have changed the outcome of the trial," he does not identify any information the journal contained about H.C.'s mental health issues that was not already shown through witness testimony. Accordingly, we find Cramer's "prejudice" argument insufficiently developed and thus waived. *See State v. Moody*, 208 Ariz. 424, 452, ¶ 101 n. 9 (2004) ("Failure to argue a claim usually constitutes abandonment and waiver of that claim." (quotation omitted)); *cf. State v. Thompson*, 252 Ariz. 279, 295-96, ¶¶ 57-58 (2022) (rejecting defendant's challenge to trial court's decision to strike certain prospective jurors because defendant did not "articulate[] how any of the strikes prejudiced him"). And because an IAC claim cannot succeed absent a showing of

---

[2] At trial, H.C.'s mother testified that, at the time she disclosed Cramer's abuse, H.C. had been diagnosed with depression and was "cutting" herself. Forensic interviewer Wendy Dutton testified that she observed "marks on [H.C.'s] arms" when she interviewed her, and that H.C. admitted that "she had been cutting." Similarly, the nurse who conducted the sexual assault examination testified that H.C. said she had been having "suicidal thoughts for about [a] year."

prejudice, *see Strickland*, 466 U.S. at 687–88, Cramer's waiver of his prejudice argument is fatal to his IAC claim.

## CONCLUSION

**¶30** Because the superior court did not abuse its discretion by summarily dismissing Cramer's PCR petition, we grant review and deny relief.

