UNITED STATES of America

v.

Edward Kenneth SMALL, Jr., et al.

Appeal of Samuel Samson ALLEN.

No. 72-1432.

United States Court of Appeals,
Third Circuit.

Argued Oct. 30, 1972.

Decided Dec. 29, 1972.

C. Clark Hodgson, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., for appellant.

Richard M. Meltzer, Asst. U. S. Atty., Philadelphia, Pa., for appellee.

Before KALODNER, ADAMS and MAX ROSENN, Circuit Judges.

OPINION OF THE COURT

MAX ROSENN, Circuit Judge.

Samuel Samson Allen appeals a conviction by a jury in the United States District Court for the Eastern District of Pennsylvania for conspiring to rob a

bank in violation of 18 U.S.C. § 2113. Appellant claims plain error in the failure of the trial judge to instruct the jury on the necessity of finding commission of an overt act in order to find defendant guilty of conspiracy. He also claims several other errors, including the refusal of the trial judge to recuse himself from presiding over this retrial of Allen because the judge had seen Allen's presentence report at the conclusion of the first trial. We find it necessary to reverse the judgment of conviction due to the inadequate jury instructions.

Appellant was first tried and convicted on bank robbery and conspiracy charges in September 1970. The trial judge sentenced him to twenty years imprisonment. On appeal, this court reversed the judgment and remanded for a new trial. United States v. Small, 443 F.2d 497 (3d Cir. 1971).

Following the reversal, Allen was brought before the same trial judge on November 30, 1971, on the same charges of conspiring to rob and robbing the National Bank of Chester County and Trust Company in Exton, Pennsylvania. He was acquitted of the substantive bank robbery counts, but found guilty of the conspiracy charge.

 Acquittal on the substantive counts emphasizes the substantial importance to defendant's rights of the failure by the trial judge to instruct properly on the elements of the conspiracy count. Commission of an overt act by one of the conspirators is an essential element of the crime of conspiracy. Bradford v. United States, 413 F.2d 467, 470 (5th Cir. 1969); Walker v. United States, 342 F.2d 22, 25 (5th Cir. 1965); Hansen v. United States, 326 F.2d 152, 156 (9th Cir. 1963). The overt act is important in demonstrating more than a subjective mental intent to commit a crime on the part of the conspirators. When the instructions fail to specify every essential element of the crime, the failure constitutes plain error which can be considered on appeal under Federal Rule of Criminal Procedure 52(b), even though no objection was made at trial. Byrd v. United States, 119 U.S.App.D.C. 360, 342 F.2d 939, 942 (1965); cf. United States v. Vitiello, 363 F.2d 240, 243 (3d Cir. 1966).

After a careful search of the jury instruction, we have found several references to overt acts, but at no point was the jury told that it must determine at least one overt act was committed in order to find Allen guilty of conspiracy. The jury was instructed that:

> Any act done by any of the participants in pursuance of the original plan and with reference to the common object and contemplation of law is the act of all.

In setting out the elements of conspiracy, however, the trial judge listed as necessary elements only (1) a combination of two persons, (2) a real agreement, and (3) an unlawful purpose. Conspicuous by its absence is a reference to the necessity of finding the commission of an overt act. The most explicit reference to overt acts, rather than implying a necessity of finding such acts had been committed, unfortunately, conveyed an opposite impression:

> Now, the indictment goes on to recite overt acts. If that comes to your attention, they are *unimportant*. You needn't conclude that each overt act in here was proven or not proven. What your concern is is whether the evidence presented from this witness stand and the other exhibits bring you to a conclusion that a crime was committed and that this man committed it, whether or not others did is unimportant; the question is if he did. [Emphasis added.]

The failure to instruct on overt acts cannot be assumed to have been unimportant to defendant's due process rights. Twelve overt acts were charged in Allen's indictment. Seven of the alleged overt acts involved driving to, robbing, and leaving the bank. As Allen was acquitted on the substantive counts of the indictment, there must be some

doubt as to whether the jury found proof of these acts. The other five alleged overt acts involved a reconnaissance of a bank. Witness testimony, however, is in conflict on whether this reconnaissance was of the Exton, Pennsylvania, National Bank of Chester County and Trust Company, and on what date the reconnaissance occurred.

■ Looking at the instructions as a whole, therefore, we find plain error was committed in the failure of the court to instruct on all necessary elements of the crime of conspiracy. We reverse on this ground.

Although we need not decide the recusal issue, appellant's argument raises serious questions of judicial administration which merit discussion.

Allen was sentenced after his first trial. The trial judge read Allen's presentence report in accordance with Federal Rule of Criminal Procedure 32(c). When he was brought before the same district court judge for retrial, Allen moved for the judge to recuse himself because he had seen the presentence report. Allen submitted an affidavit of bias in support of his motion.[1] The motion was denied as being insufficient as a matter of law to demonstrate the personal bias or prejudice necessary to qualify for relief under 28 U.S.C. § 144 and incorrect in its assertion that recusal is mandated by Gregg v. United States, 394 U.S. 489, 89 S.Ct. 1134, 22 L.Ed.2d 442 (1969). On appeal, Allen does not allege any prejudicial conduct on the part of the trial judge at the retrial; his sole claim is that *Gregg* mandates that the judge should have recused himself.

■ The *Gregg* decision suggests strongly that recusal is mandated in circumstances similar to the present case. Federal Rule of Criminal Procedure 32(c)(1) provides:

> The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless the court otherwise directs. The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty.

In writing the definitive interpretation of Rule 32 in *Gregg,* the Supreme Court admitted to no exceptions in the Rule's admonition that the trial judge should not see the presentence report before a jury returns its verdict:

> Rule 32 is explicit. It asserts that the "report shall not be submitted to the court . . . unless the defendant has pleaded guilty or has been found guilty." This language clearly permits the preparation of a presentence report before guilty plea or conviction but it is equally clear that the report must not, *under any circumstances,* be "submitted to the court" before the defendant pleads guilty or is convicted. Submission of the report to the court before that point constitutes error of the clearest kind. [Emphasis added.]

Gregg v. United States, 394 U.S. at 491–492, 89 S.Ct. at 1136. Mr. Justice White, writing for the Court in *Gregg,* indicated that no judicial prejudice need be shown to constitute error when the judge has seen the presentence report prior to conviction:

> Moreover, the rule must not be taken lightly. Presentence reports are documents which the rule does not make

---

[1]. At a hearing on a petition to reduce bail, on September 28, 1971, before the retrial, the district court judge stated:
Here is a man with a valid presentence report and other investigations which indicate not only that he was involved in other bank robberies but that he is a more or less leader of a group who have robbed banks in this area and I believe elsewhere. From the testimony at trial and from other matters which I have available to me, it took months to apprehend him in the first instance. It is, my firm belief that were he released on his own recognizance or nominal bail he would immediately flee. His whole background and record indicates that to me.

available to the defendant as a matter of right. There are no formal limitations on their contents; and they may rest on hearsay and contain information bearing no relation whatever to the crime with which the defendant is charged. To permit the *ex parte* introduction of this sort of material to the judge who will pronounce the defendant's guilt or innocence or who will preside over a jury trial would seriously contravene the rule's purpose of preventing possible prejudice from premature submission of the presentence report. No trial judge, therefore, should examine the report while the jury is deliberating since he may be called upon to give further instructions or answer inquiries from the jury, in which event there would be the *possibility of prejudice* which Rule 32 intended to avoid. Although the judge may have that information at his disposal in order to give a defendant a sentence suited to his particular character and potential for rehabilitation, there is no reason for him to see the document until the occasion to sentence arises, and under the rule he must not do so. [Emphasis added.]

Gregg v. United States, 394 U.S. at 492, 89 S.Ct. at 1136. The Court's opinion emphasizes that Rule 32's prohibition is aimed not merely at preventing prejudice to the defendant, but preventing even the possibility of prejudice.

Although the Court spoke in no uncertain terms of the clear error inherent in a judge's viewing of a presentence report before conviction, regardless of any showing of prejudice, its language was admittedly dicta. In *Gregg,* the trial judge had stated just minutes after the jury returned its verdict that he had read the presentence report. The record was unclear, however, as to exactly when the judge had read the report. If it had been read prior to the return of the verdict, Gregg might have been entitled to an automatic reversal without any proof of prejudice. The court, however, found insufficient proof that the judge read it before the return. Finding, in effect, that the judge read the report after the return, the Court proceeded to search the record to determine if there was any possibility that the judge had prejudiced defendant because of his reading of the report. Finding no possible prejudice nor any clear proof of violation of the Rule, the Court affirmed Gregg's conviction.

The Court's search for possible prejudice in *Gregg* was inspired by the failure of the record to show when the judge had read the presentence report. In the present case, there is no such hole in the record. Although there is clear evidence here that the trial judge had read the presentence report before trying Allen a second time, application of the *Gregg* doctrine to the case *sub judice* is not explicitly mandated. The Supreme Court was obviously not considering the retrial context when it wrote *Gregg.* Nor was it considering other similar circumstances when a judge may see a presentence report on a defendant before proceeding to try him. Such circumstances would occur if a trial judge accepted a guilty plea on some counts and sentenced the defendant on those counts before proceeding to try other counts to which the defendant had pleaded not guilty, or if the trial judge had presided and sentenced following conviction of defendant on one criminal offense and shortly thereafter was assigned to try the same defendant on other charges. *See* Webster v. United States, 330 F.Supp. 1080 (E.D.Va.1971). *See also* Smith v. United States, 360 F. 2d 590 (5th Cir. 1966), where the trial judge had retired to his chambers, after verdict was pronounced, to read the presentence report, but then reopened testimony in light of one witness' change of testimony to be more favorable to defendant.

■ Important to an application of the *Gregg* principles in any of these situations would be the Supreme Court's guideline in Fallen v. United States, 378

U.S. 139, 142, 84 S.Ct. 1689, 1691, 12 L. Ed.2d 760 (1964), that:

the Rules are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances. Rule 2 begins with the admonition that "[t]hese rules are intended to provide for the just determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay."

In *Gregg,* the Court stated that "there is no reason" for a judge to see a presentence report until sentencing occurs. Gregg v. United States, 394 U.S. at 492, 89 S.Ct. 1134. As the present case, and the other examples above, demonstrate, however, circumstances often may arise when the judge views a defendant's presentence report for legitimate purposes before trying him or presiding over his trial. It thus becomes necessary to balance Rule 32's objective of preventing even the possibility of prejudice with the administrative convenience, simplicity of procedure and prevention of delay implicit in having a single judge preside over a defendant's court appearances.

Crowded trial court calendars have led commentators and courts to favor procedures by which one judge presides over a defendant's many appearances in court. Many district courts are now on an individual trial calendar system under which a case is assigned to a judge when docketed and continues under his control until final disposition by that court. *See, e. g.,* Rules of the United States District Court for the Eastern District of Pennsylvania, Rules of Criminal Procedure, Rule 2 (1972). Different considerations have led to a movement toward judicial involvement in the plea bargaining process. Suggestions have included allowing the judge to see the presentence report before accepting a guilty plea. *See* Committee on Rules of Practice and Procedure, Preliminary Draft of Proposed Amendments to the Federal Rules of Criminal Procedure for the United States District Courts and the Federal Rules of Appellate Procedure, 52 F.R.D. 409, 457–458 (1971). In such cases, if the plea is rejected, the *Gregg* problem would arise should the same judge try the defendant.

The conflicting values involved in applying the teaching of the *Gregg* case to the present appeal need not be reconciled because the judgment must be reversed on other grounds. The same questions, however, are likely to arise again. The complex nature of the values at stake merits consideration by the district courts.

We have reviewed appellant's other contentions and find them *without* merit.

Judge Adams concurs in the result reached, on the ground the charge was erroneous.

The judgment of the district court will be reversed.