IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

FILED BY CLERK

DEC 19 2006

COURT OF APPEALS
DIVISION TWO



| | | |
|---|---|---|
| EDWARD P. BOLDING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | 2 CA-SA 2006-0085 |
| HON. HOWARD HANTMAN, Judge of | ) | DEPARTMENT B |
| the Superior Court of the State of | ) | |
| Arizona, in and for the County of Pima, | ) | O P I N I O N |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR-20061270

JURISDICTION ACCEPTED; RELIEF GRANTED

Robert J. Hooker, Pima County Public Defender
  By Robert J. Hirsh                                                      Tucson
                                                          Attorneys for Petitioner

Terry Goddard, Arizona Attorney General
  By Kimberly H. Ortiz                                                   Tucson
                                           Attorneys for Real Party in Interest

B R A M M E R, Judge.

¶1         The respondent judge denied petitioner Edward Bolding's peremptory notice of change of judge filed against him pursuant to Rule 10.2, Ariz. R. Crim. P., 16A A.R.S. As Bolding "has no equally plain, speedy, or adequate remedy by appeal of a denial of notice of change of judge, special action review is appropriate." *Medders v. Conlogue*, 208 Ariz. 75, ¶ 1, 90 P.3d 1241, 1242 (App. 2004); *see* Ariz. R. P. Spec. Actions 1(a), 17B A.R.S. Accordingly, we accept jurisdiction. Concluding the respondent judge proceeded "without or in excess of [his] jurisdiction or legal authority," we grant relief. Ariz. R. P. Spec. Actions 3(b).

## Factual and Procedural Background

¶2         Bolding, a former attorney, is charged with engaging in a scheme and artifice to defraud his former client, Marjorie Hagen. The Pima County Public Defender was appointed to represent Bolding, and attorney Robert Hirsh was assigned to Bolding's case. Hagen had met with Hirsh in 2004, while Hirsh was in private practice. She had been seeking legal representation in a civil action against Bolding related to the same events at issue in the criminal case. Based on the belief that Hagen had disclosed confidential information to Hirsh during this meeting, the state sought to disqualify the Public Defender's office from representing Bolding. *See* E.R. 1.18, Ariz. R. Prof'l Conduct, Ariz. R. Sup. Ct. 42, 17A A.R.S.

¶3         The judge to whom Bolding's case had been assigned (the trial court) found Hagen "was at least a prospective client under Ethical Rule 1.18," and referred the matter "to

2

the criminal assignment judge for [a] special assignment regarding the determination of whether Mr. Hirsh and his office should be disqualified." The trial court instructed the assigned respondent judge to examine Hagen "in camera and ex parte[] to ascertain whether any confidences were exchanged between [her] and [Hirsh] and to determine whether [Hirsh] is ethically prohibited from continuing to represent Mr. Bolding." The trial court directed that, "in the event the preliminary results of this review indicate that [Hirsh] should be disqualified," the respondent judge was to permit the defense to present evidence for the respondent judge's "ultimate determination."

¶4        Bolding filed a notice requesting a change of judge from the respondent judge, pursuant to Rule 10.2. The state moved to strike the notice, asserting the notice was "against a judge not assigned to the case." The respondent judge agreed, stating, "Rule 10.2 . . . applies only to the assigned trial judge," and denied Bolding's request for a change of judge. This petition for special action followed.

## Discussion

¶5        In his special action petition, Bolding argues the respondent judge exceeded his legal authority by ruling on Bolding's request for a change of judge. He also contends the respondent judge's ruling that Rule 10.2 does not apply to this situation was incorrect. Bolding's latter argument requires us to determine whether Rule 10.2 permits a peremptory change of a judge assigned to decide a specific legal issue separately from the rest of the case or if that rule permits only a peremptory change of the judge assigned to hear the entire case.

3

Rule 10.2(a) states, in pertinent part: "In any criminal case other than a death penalty case, each side is entitled as a matter of right to a change of judge."

¶6        "In construing procedural rules promulgated by our supreme court, we employ the traditional tools of statutory construction." *Medders*, 208 Ariz. 75, ¶ 9, 90 P.3d at 1244. We look first to the plain language of the rule. *In re MH 2004-001987*, 211 Ariz. 255, ¶ 15, 120 P.3d 210, 213 (App. 2005). "[P]rovisions [of a court rule] must be considered in the context of the entire [rule] and consideration must be given to all of the [rule's] provisions to determine the [supreme court's] intent manifested by the entire [rule]." *Medders*, 208 Ariz. 75, ¶ 10, 90 P.3d at 1244, *quoting Guzman v. Guzman*, 175 Ariz. 183, 187, 854 P.2d 1169, 1173 (App. 1993). By its plain language, Rule 10 applies to a judge assigned to a case. Rule 10.1(a) permits reassignment "if a fair and impartial hearing or trial cannot be had by reason of the interest or prejudice of the assigned judge." Rule 10.2(c) provides, in relevant part, that a notice of change of judge must be filed within ten days of "[a]rraignment, if the case is assigned to a judge and the parties are given actual notice of such assignment at or prior to the arraignment," or after "actual notice to the requesting party of the assignment of the case to a judge."

¶7        The rule, however, does not specify whether "assignment of the case" necessarily limits its application to the judge to whom the entire case is assigned, or to a judge to whom a discrete part of the case is assigned. Because the rule is ambiguous, we consider other factors, namely, the rule's "'context, subject matter, effects, consequences,

4

spirit, and purpose.'" *Bergeron ex rel Perez v. O'Neil*, 205 Ariz. 640, ¶ 16, 74 P.3d 952, 958 (App. 2003), *quoting Vega v. Sullivan*, 199 Ariz. 504, ¶ 8, 19 P.3d 645, 648 (App. 2001).

¶8        Bolding argues the respondent judge's reliance on *Medders* in ruling Rule 10.2 does not apply was misplaced. In *Medders*, the petitioner had filed a motion to modify his release conditions with the judge assigned to his criminal case. 208 Ariz. 75, ¶ 3, 90 P.3d at 1242. The order setting the hearing, however, was not signed by the original judge assigned to the case, but by the respondent judge, and that judge conducted the hearing. *Id.* The original judge subsequently vacated the trial date and scheduled the trial before the respondent judge. *Id.* ¶ 4. Medders requested a Rule 10.2 change of judge, which the respondent judge denied, finding Medders had, pursuant to Rule 10.4(a), "waived his right to a peremptory change of judge by appearing before him at the contested release-conditions hearing." *Id.*

¶9        We concluded Medders had not waived his right to a peremptory challenge because the respondent judge had not yet been assigned to Medders's case when he conducted the release conditions hearing. *Id.* ¶ 10. We reasoned that Rule 10.4 applies only to "the judge who is assigned the case for purposes of Rule 10.2 at the time of the contested hearing."[1] *Id.* The facts before us are similar to those in *Medders*. The respondent judge

_____

[1] We also stated, "Medders presumably could not have filed a notice of peremptory change of the respondent judge upon receiving notice . . . that the respondent judge would hear the release-conditions matter." *Medders*, 208 Ariz. 75, ¶ 7, 90 P.3d at 1243. This language, although equivocal, could be read to support the respondent judge's ruling here. However, we did not have to decide that question in *Medders* and do not consider it authority for that proposition.

here was involved in this case for the limited purpose of determining whether Hirsh should be disqualified. In *Medders*, however, there was no suggestion that the assigned judge had relinquished the authority to review, for example through a request for modification of release conditions, the respondent judge's ruling on Medders's release conditions. Conversely, the trial court here explicitly instructed the respondent judge to make the "ultimate determination" whether Hirsh should be disqualified.

**¶10**     We noted in *Medders* that the situation there "may have arisen as an unintended consequence of the [superior court's] attempt to efficiently administer its docket by allowing one division to hear relatively minor matters assigned to another division." *Id.* ¶ 11. The special assignment to the respondent judge here was not a product of general administrative procedure, but a specific assignment to the respondent judge to hear and decide a specific legal issue.

**¶11**     Moreover, the trial court here reassigned the disqualification issue "to avoid having the trial judge tainted by . . . *ex parte* contact [with Hagen]." *See, e.g., United States v. Adams*, 785 F.2d 917, 920 (11th Cir. 1986) (although "in some situations the trial judge may find an *ex parte* conference necessary," "court must insure that the conference is carefully conducted so that no rights of the defendant are threatened"). And, although we recognize an indigent defendant, unlike a defendant who does not require appointed counsel, does not have the right to choose which attorney will be appointed to represent him, *see United States v. Gonzales-Lopez*, ___ U.S. ___, ___, 126 S. Ct. 2557, 2561 (2006); *Robinson*

6

*v. Hotham*, 211 Ariz. 165, ¶ 11, 118 P.3d 1129, 1132 (App. 2005), the trial court's adopted procedure was necessary to protect Bolding's right to counsel in the face of the state's effort to disqualify his appointed attorney.

¶12 In *Medders*, we cited *State v. Cozad*, 113 Ariz. 437, 438, 556 P.2d 312, 313 (1976), for the proposition that the "assigned judge for Rule 10.2 purposes is [the] judge who is scheduled to preside over trial." *Medders*, 208 Ariz. 75, ¶ 10, 90 P.3d at 1244. Read out of the context of *Cozad*, this language arguably supports the respondent judge's decision. *Cozad*, however, addressed whether the ten-day waiver provision in Rule 10.2(b) ran from the date counsel was aware which judge would be assigned, rather than from the date the judge "assum[ed] the calendar." 113 Ariz. at 438, 556 P.2d at 313. Nothing in *Cozad* limits Rule 10.2 to the judge assigned for trial. Nor does the rule itself have such a limitation. *See State v. Barnes*, 118 Ariz. 200, 202, 575 P.2d 830, 832 (App. 1978) (party may change judge pursuant to Rule 10.2 after guilty plea has been entered).

¶13 In its response to the special action petition, the state does not defend the respondent judge's reliance on *Medders*, and instead relies chiefly on *State v. Tackman*, 183 Ariz. 236, 902 P.2d 1340 (App. 1994). There, the appellants had pled guilty to trafficking in stolen property and, as part of their plea agreements, had agreed to pay restitution to identified victims. *Id.* at 237, 902 P.2d at 1341. The sentencing court appointed a court commissioner "as a special fact-finding master to conduct the restitution hearing and report his findings to the sentencing court." *Id.* Both appellants filed a notice of change of judge

7

pursuant to Rule 10.2, which the sentencing court denied, "holding the requests inappropriate because [the commissioner] was to act only as a fact finder and not as a judge." *Id.* On appeal, Division One of this court held Rule 10.2 could not be used to challenge the appointment, reasoning the sentencing court had "retained jurisdiction over each case" and that "no assignment or reassignment to a different judge ever occurred." *Id.* at 239, 902 P.2d at 1343.

¶14 The state admits *Tackman* is not dispositive, but suggests that it is "persuasive that a [Rule] 10.2 challenge to any judge who does not retain original jurisdiction over the matter is improper." Thus, the state reasons, because the trial judge here "never relinquished his jurisdiction over the substantive criminal case," Rule 10.2 does not apply. We disagree. The court in *Tackman* recognized that "no provision exists for the peremptory removal of a special master" but noted "safeguards remain for the protection of parties who are dissatisfied with the person placed in that position. First, the parties have the right to contest the special master's findings within the time limits prescribed by statute. . . . Second, the judge—the ultimate fact finder—remains subject to a peremptory challenge." 183 Ariz. at 239, 902 P.2d at 1343. Those safeguards do not exist in the case before us. The special master in *Tackman* had been instructed to report factual findings to the sentencing court. Here, the respondent judge was instructed to rule on whether Hirsh should be disqualified. That ruling, unlike the determinations by the respondent judge in *Medders* or the special master in *Tackman*, was, by the trial court's own instruction, not subject to its review.

8

**¶15**    Neither *Medders* nor *Tackman* persuades us that Rule 10.2 does not apply to a judge assigned to make a final determination of a specific legal question separately from the rest of the case.  Neither case decided the issue Bolding presents.  Here, the trial court assigned the case to the respondent judge to decide a specific legal question, and the respondent judge's decision was not subject to review by the trial court.  Therefore, we conclude the respondent judge was "assigned the case for purposes of Rule 10.2 at the time of the contested hearing," *Medders*, 208 Ariz. 75, ¶ 10, 90 P.3d at 1244, and that Rule 10.2 applies by its plain language.

**¶16**    "[A]ny provision relating to disqualification of judges must be given strict construction to safeguard the judiciary from frivolous attacks upon its dignity and integrity and to ensure the orderly function of the judicial system."  *State v. Perkins*, 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984), *overruled on other grounds*, *State v. Noble*, 152 Ariz. 284, 287-88, 731 P.2d 1228, 1231-32 (1987).  Although nothing in the record with which we have been provided suggests the respondent judge is in any way biased, we agree with Division One of this court that "a litigant is entitled to an impartial judge at any and all stages of the proceeding." *Barnes*, 118 Ariz. at 202, 575 P.2d at 832.  Moreover, Rule 10.2 entitles a party to a peremptory change of judge as a matter of right, *Bergeron*, 205 Ariz. 640, ¶ 17, 74 P.3d at 958, "'without the necessity of divulging details that could cause needless embarrassment and antagonism or showing actual bias which may be difficult to prove,'" *id.* ¶ 23*, quoting* Rule 10.2 cmt. to 2001 amendment (emphasis removed).  To interpret Rule 10.2 as only

applying to a judge to whom an entire case is assigned would unnecessarily abrogate this important right. Again, we interpret court rules according to the principles of statutory construction. *Medders*, 208 Ariz. 75, ¶ 9, 90 P.3d at 1244. Accordingly, we will not "judicially create" an exception to the Rule's plain meaning. *State v. Ring*, 131 Ariz. 374, 378, 641 P.2d 862, 866 (1982), and we see no textual or policy reason to draw distinctions based on the scope of a judge's assignment to a case. Assignment to the case, regardless of the scope of the judge's assignment, is all the rule requires.[2]

¶17　　Moreover, Rule 10.1 permits a change of judge when "a fair and impartial *hearing or trial* cannot be had by reason of the interest or prejudice of the assigned judge." (Emphasis added.) Although we address here a request under Rule 10.2, we construe that provision "in the context of the whole of Rule 10," *Medders*, 208 Ariz. 75, ¶ 10, 90 P.3d at 1244, and the language of Rule 10.1 makes clear that Rule 10 applies not only to trials, but to all other hearings as well. Furthermore, a preliminary proceeding in a criminal case, such as a motion to suppress evidence, is often dispositive of the entire case. We see no reason to limit Rule 10.2's application to trials when other proceedings may be equally as important. Accordingly, we conclude the procedures available pursuant to Rule 10.2 apply to the

---

[2]Although the state asserts it "believes that [Bolding's] [Rule] 10.2 notice of change of judge was improper forum shopping," it has provided no evidentiary or legal support for that allegation. Accordingly, we do not address it. *See* Ariz. R. P. Spec. Actions 7(i), 17B A.R.S. (Rules of Civil Appellate Procedure apply to special actions); Ariz. R. Civ. App. P. 13(a)(6), (b), 17B A.R.S. (argument must contain citations to relevant legal authorities).

respondent judge and that he exceeded his jurisdiction and legal authority by striking Bolding's notice of change of judge.

¶18     Because we find the respondent judge's ruling was erroneous, we need not address Bolding's argument the respondent judge was without authority to rule on his notice of change of judge. We reiterate the comment we made in *Medders*, however, that Rule 10 does not clearly explain if the judge subject to the Rule 10.2 notice may rule on the notice's timeliness, *see* 208 Ariz. 75, n.1, 90 P.3d at 1243 n.1, or, as in this case, whether the rule may be invoked at all.[3]

¶19     We accept jurisdiction of this special action and grant relief. We direct the presiding judge of the Pima County Superior Court to reassign the case consistent with this opinion.

_____
J. WILLIAM BRAMMER, JR., Judge

CONCURRING:

_____
PETER J. ECKERSTROM, Presiding Judge

_____
PHILIP G. ESPINOSA, Judge

_____

[3]We note, however, that a challenged judge may not exercise his or her "own discretion in deciding whether to make the required reassignment." *Bergeron ex rel. Perez v. O'Neil*, 205 Ariz. 640, ¶ 17, 74 P.3d 952, 959 (App. 2003).

11