FILED BY CLERK

JUN 30 2009

COURT OF APPEALS
DIVISION TWO

IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

GERARDO LOPEZ, )
)
Petitioner, )
)
v. )
) 2 CA-SA 2009-0024
HON. JAN KEARNEY, Presiding Judge ) DEPARTMENT A
of the Superior Court of the State of )
Arizona, in and for the County of Pima; ) O P I N I O N
and HON. HOWARD HANTMAN, )
Judge of the Superior Court of the State )
of Arizona, in and for the County of Pima, )
)
Respondents, )
)
and )
)
STATE OF ARIZONA, )
)
Real Party in Interest. )
)

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR-20080034

JURISDICTION ACCEPTED; RELIEF DENIED

Robert J. Hirsh, Pima County Public Defender
 By Brian X. Metcalf and Wesley Jamiel Allen                            Tucson
                                                      Attorneys for Petitioner


Barbara LaWall, Pima County Attorney
 By Jacob R. Lines                                                     Tucson
                                          Attorneys for Real Party in Interest

E S P I N O S A, Judge.

**¶1**          In this special action, petitioner Gerardo Lopez, a criminal defendant charged with first-degree murder, seeks relief from the order of respondent Judge Howard Hantman denying Lopez's motion for an automatic change of judge pursuant to Rule 17.4(g), Ariz. R. Crim. P., and, alternatively, from respondent Judge Jan Kearney's denial of his motion to disqualify respondent Judge Hantman for cause pursuant to Rule 10.1, Ariz. R. Crim. P. In its response, the state agrees respondent Judge Hantman abused his discretion in denying Lopez's request for an automatic change of judge after having rejected his plea agreement. Because the parties base their challenge to that decision on the construction of court rules, which we review de novo, *see State v. Hansen*, 215 Ariz. 287, ¶ 6, 160 P.3d 166, 168 (2007), and because the question presented is a matter of first impression, we accept jurisdiction to review respondent Judge Hantman's ruling pursuant to Rule 17.4(g).[1]  *See State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, ¶ 8, 30 P.3d 649, 652 (App. 2001) (court  more likely to accept special action jurisdiction "in cases involving a matter of first impression, statewide significance, or pure questions of law"); *see also Taliaferro v. Taliaferro*, 186 Ariz. 221, 223, 921 P.2d 21, 23 (1996) (special action review appropriate for "testing rulings dealing with a peremptory challenge of a judge").  For the reasons that follow, we conclude Lopez has not established that the respondent judge failed to perform a legal duty, acted outside of his legal

---

[1]We decline jurisdiction on Lopez's challenge, in the alternative, to respondent Judge Kearney's denial of his motion to change the assigned judge for cause.  Hence, in this decision any subsequent references to the respondent judge refer to Judge Hantman.

2

authority, or abused his discretion in denying Lopez an automatic change of judge pursuant to Rule 17.4(g). *See* Ariz. R. P. Spec. Actions 1. Accordingly, we deny relief.

## Background

**¶2** Lopez was arrested and charged with sexual assault in late December 2007, after turning himself in to face allegations that he had sexually assaulted his girlfriend's sister on Christmas Day. He was also served with an outstanding felony warrant and charged with two counts of first-degree murder, unrelated crimes he had allegedly committed in 1995. Both the sexual assault and murder cases were assigned to the respondent judge.

**¶3** The sexual assault case was resolved in August 2008, after the court accepted Lopez's plea of guilty to kidnapping with intent to commit a sexual offense, approved the terms of Lopez's plea agreement, reviewed a presentence report prepared by the Pima County adult probation department, and sentenced him to a presumptive, five-year term of imprisonment. As part of the plea agreement, Lopez and the state had stipulated that "neither the [resulting] conviction . . . nor any statements made by [Lopez] with respect to the factual basis nor the sentencing for that conviction, shall be used for any purposes" in Lopez's murder trial, "including impeachment of [Lopez] or his witnesses and/or sentence enhancement."

**¶4** Six months later, four days before trial was scheduled to begin in the murder case, the parties presented the court with a plea agreement that would have amended both charges from first- to second-degree murder, limited Lopez's sentences to a mitigated range

3

of ten to fourteen years' imprisonment, and required those sentences be served concurrently with each other and with the sentence previously imposed for the kidnapping conviction. But much of the discussion at that hearing involved Manny C., a fact witness for the state who had appeared unwilling to testify at trial. The respondent judge agreed with the state that the trial should be continued and stated he was not prepared to accept Lopez's plea agreement on the existing record.

¶5        At a status conference a week later, the respondent judge again declined to accept the plea agreement. As new information in the case, the state provided the court with an audio recording of a recent interview police officers had conducted with Manny's mother, in which she described her observations of and conversations with Lopez shortly after the homicides. Over Lopez's objection, the respondent judge told the parties he would review the recorded interview, along with grand jury transcripts and statements made by Lopez and Manny, before deciding whether he would accept the plea agreement as an appropriate resolution of the case.

¶6        At the next status conference, the respondent judge rejected the plea agreement. Without mentioning any presentence report, the respondent judge found the agreement's proposed limitation of Lopez's sentences to mitigated, concurrent prison terms was inappropriate "given what [Lopez is] charged with, what the evidence is, what his new [kidnapping] conviction is for, and the fact that I think [fourteen] years with the five he's

4

doing anyway is disproportionate to this activity . . . ." The respondent judge then scheduled the trial to begin seventeen days later.

¶7        Lopez immediately requested a change of judge pursuant to Rule 17.4(g), which provides for an automatic change of judge when a defendant withdraws his plea of guilty "after submission of the presentence report."[2]   When the respondent judge asked where the presentence report was, Lopez said he believed the respondent judge's review of a presentence report before sentencing him in the kidnapping case was sufficient to trigger the automatic disqualification provision in Rule 17.4(g).  The respondent judge denied the request, and Lopez filed a written motion for Rule 17.4(g) recusal several days later.

¶8        At the hearing on that motion, the respondent judge told the parties he had "no . . . recollection of reading" the presentence report prepared in the other case seven months earlier, and he questioned whether Rule 17.4(g) would apply when the presentence report he

---

[2]We recognize that Lopez technically did not "withdraw" his plea of guilty.  Before rejecting the agreement, the respondent judge had declined to conduct a change of plea hearing to determine "the accuracy of the agreement and the voluntariness and intelligence of the plea," *see* Ariz. R. Crim. P. 17.4(c), and, as a result, Lopez's guilty plea had never been entered.  We assume, without deciding, that the respondent judge's rejection of the plea agreement before permitting Lopez to enter a guilty plea is equivalent to a defendant's withdrawal of an entered plea after a plea agreement has been rejected.  *See* Ariz. R. Crim. P. 17.4(e) ("If an agreement or any provision thereof is rejected by the court, it shall give the defendant an opportunity to withdraw his or her plea . . . ."); *see also State v. Superior Court*, 183 Ariz. 327, 328, 330, 903 P.2d 635, 636, 638 (App. 1995) (implicitly suggesting court's aborting change of plea proceeding and rejecting plea agreement equivalent to defendant's withdrawing plea for purposes of Rule 17.4(g)). *But cf. Chavez v. Maricopa County Superior Court*, 181 Ariz. 93, 94-95, 887 P.2d 623, 624-25 (App. 1994) (Rule 17.4(g) triggered by withdrawal of plea, not by rejection of agreement; change of judge permitted when defendant revoked agreement before court's acceptance but after court's review of presentence report).

5

had previously reviewed was "not related to this change of plea." After stating it had been unable to resolve what it perceived as a conflict in the rules, the state agreed with Lopez that the respondent judge's rejection of the plea agreement, combined with his previous review of a presentence report about Lopez—albeit one prepared in another case—entitled Lopez to a peremptory change of judge. The respondent judge then reaffirmed his rejection of the plea agreement and confirmed the trial date, implicitly denying Lopez's motion for disqualification. This special action followed.

**Discussion**

¶9 Like Rule 10.2, Ariz. R. Crim P., Rule 17.4(g) provides for a peremptory change of judge, and a judge is without discretion to deny a request for disqualification when a guilty plea "is withdrawn after submission of the presentence report." *See, e.g.*, *Fiveash v. Superior Court*, 156 Ariz. 422, 425, 752 P.2d 511, 514 (App. 1988). Relying on *Chavez v. Superior Court*, 181 Ariz. 93, 887 P.2d 623 (App. 1994), and *Scarborough v. Superior Court*, 181 Ariz. 283, 889 P.2d 641 (App. 1995), Lopez maintains the mandatory nature of the rule reflects "the unique importance of a presentence report . . . as a form of prejudicial information" and argues the rule's reference to "submission of the presentence report" is not limited to one prepared specifically for the pending case. He notes that a trial court may, in its discretion, waive preparation of a presentence report when one "concerning the defendant is already available." Ariz. R. Crim. P. 26.4(a). According to Lopez, because he had been in custody since his sentencing for the kidnapping conviction and because the respondent

6

judge had reviewed a presentence report about him then, "[n]o additional pre-sentence [report] was required for the homicide case," and the respondent judge exceeded his legal authority when he denied the Rule 17.4(g) motion for disqualification.

¶10 The state acknowledges that, "[b]ased solely on the phrase 'the presentence report,' it seems that [Rule 17.4(g)] refers only to the presentence report generated for the specific case in question." But it nevertheless agrees with Lopez that, in light of Rule 26.4(a), the respondent judge was required to disqualify himself "because he had reviewed Petitioner's presentence report before rejecting his plea." The state opines that, "[e]ven if a second report had been ordered, it would likely have contained the same information as the first." Therefore, as noted earlier, the state concedes error in the respondent judge's denial of Lopez's motion under Rule 17.4(g). But we are not bound by the state's confession of error, *State v. Sanchez*, 174 Ariz. 44, 45, 846 P.2d 857, 858 (App. 1993), particularly when applicable legal principles do not support it.

¶11 As we have in other cases construing Rule 17.4(g), we begin with the premise that a provision concerning the disqualification of a judge is strictly construed. *See, e.g.*, *Fiveash*, 156 Ariz. at 425, 752 P.2d at 514 (by receiving change of judge under Rule 17.4(g), defendant exhausted further peremptory change under Rule 10.2). Division One of this court recently summarized our reasons for this rule of construction:

> We apply a strict construction for three primary reasons. First, we recognize a need "to safeguard the judiciary from frivolous attacks upon its dignity and integrity." [*Fiveash*, 156 Ariz. at 425, 752 P.2d at 514.] Second, a strict construction helps to

7

ensure the "orderly operation of the judicial system." [*State ex rel. Thomas v.*] *Gordon*, 213 Ariz. [499, ¶ 27], 144 P.3d [513,] 518 [(App. 2006)]. Third, we recognize the potential for abuse of the peremptory challenge. *Id.* Therefore, we avoid construing these provisions in a way that "would expand the availability of peremptory changes of judge."

*Reed v. Burke*, 219 Ariz. 447, ¶ 13, 199 P.3d 702, 705 (App. 2008) (change of judge pursuant to Rule 17.4(g) subject to same ten-day time limitation in Rule 10.2). The relevant question, then, is whether Rule 17.4(g)'s reference to "the submission of the presentence report," construed narrowly, encompasses the respondent judge's previous review of a presentence report submitted for Lopez's sentencing on an unrelated conviction in a separate case over which the same judge had presided.

¶12        "In construing procedural rules promulgated by our supreme court, we employ the traditional tools of statutory construction." *Medders v. Conlogue*, 208 Ariz. 75, ¶ 9, 90 P.3d 1241, 1244 (App. 2004). To determine our supreme court's intent in promulgating a procedural rule, we look first to the rule's plain language, considering particular provisions in the context of the entire rule. *Bolding v. Hantman*, 214 Ariz. 96, ¶ 6, 148 P.3d 1169, 1171 (App. 2006). Rule 17.4 pertains to plea negotiations and agreements, and the plain meaning of Rule 17.4(g) is that disqualification is mandatory upon request after the judge has reviewed the presentence report for the case in which the defendant has first entered, then withdrawn, a negotiated plea of guilty. *See* Ariz. R. Crim. P. 17.4(g) (disqualification may be requested "[i]f a plea is withdrawn after submission of *the* presentence report . . . .") (emphasis added).

8

**¶13**		This construction is consistent with the other provisions of Rule 17.4. After a plea agreement has been filed, Rule 17.4(c) provides for the court to conduct a change of plea hearing to determine the accuracy of the agreement and whether the defendant's guilty plea is voluntary and intelligent. Rule 17.4(d) provides for the trial court to then accept or reject the plea agreement but further specifies the court will not be bound by the agreement's sentencing provisions "if, after accepting the agreement and reviewing a presentence report, it rejects the provision[s] as inappropriate." If a court rejects any provisions of a plea agreement—either initially or after reconsidering its acceptance of sentencing terms upon reviewing the presentence report—it shall afford the defendant the opportunity to withdraw the entry of his guilty plea. Ariz. R. Crim. P. 17.4(e). Rule 17.4(g) does not apply every time the court rejects the terms of a plea agreement and a defendant withdraws his plea, but only when the withdrawal occurs "after submission of the presentence report."

**¶14**		We need not determine whether Rule 17.4(g) might apply if a trial court were to exercise its discretion to waive preparation of a presentence report because an existing report was already available, *see* Ariz. R. Crim. P. 26.4(a), and then to reject the defendant's plea agreement after having considered that report. The respondent judge did not do that here. Essentially, Lopez suggests we should deem the respondent judge to have waived the preparation of a new presentence report on the murder charges merely because he had the discretion to do so, so that we may then, in turn, deem the report from the earlier proceeding as having been submitted in this case for purposes of Rule 17.4(g) disqualification.

9

¶15 But the respondent judge was not required to consider any presentence report—and does not appear to have done so in this case—before deciding whether the plea agreement was acceptable, as long as he gave the agreement "'individualized consideration.'"[3] *State v. Superior Court*, 183 Ariz. 327, 329-30, 903 P.2d 635, 637-38 (App. 1995), *quoting Espinoza v. Martin*, 182 Ariz. 145, 148, 894 P.2d 688, 691 (1995). Moreover, we are not persuaded by the parties' contention that, had he wanted to review a presentence report before deciding whether to accept the plea agreement, the respondent judge would have waived its preparation and relied on the earlier report.[4]

¶16 We are also unpersuaded by Lopez's argument that Rule 17.4(g) should be extended to the circumstances of this case because a presentence report is a "unique[ly] importan[t] . . . form of prejudicial information." As this court noted in *Fiveash*, the only comment the advisory committee has provided for Rule 17.4(g) is a citation to *Gregg v.*

---

[3]Contrary to Lopez's argument, Rule 26.4(a) further supports our construction limiting the reference in Rule 17.4(g) to the presentence report submitted after the court has provisionally accepted a negotiated plea. Rule 26.4(a) provides, "A pre-sentence report shall not be prepared until after the determination of guilt has been made or the defendant has entered a plea of guilty or no contest." Because the respondent judge had never accepted Lopez's guilty plea, he had not yet had occasion to decide whether to require preparation of a new presentence report or, in his discretion, to rely instead on the report prepared for the earlier proceeding.

[4]The probation officer who had prepared the August 2007 report noted it was based on "minimal information" because Lopez had declined to be interviewed on the advice of counsel, citing his pending murder trial. As a result, the report contains little more than Lopez's juvenile court history. The probation officer was unable to discover any information "about [Lopez's] life between 1994 when he was released from JDOC and his arrest for the [kidnapping] offense in December 2007" and thus found it "impossible to ascertain any clear picture" of him based on the limited information available.

10

*United States*, 394 U.S. 489 (1969), a case in which the United States Supreme Court construed former Rule 32, Fed. R. Civ. P., as "preventing possible prejudice from premature submission of the presentence report." *Id*. at 492. In *Gregg*, the trial judge had reviewed the defendant's presentence report while the jury was deliberating and, although the Court found the error harmless in that case, it emphasized that violation of the federal rule was "error of the clearest kind." *Id*. The Court stated:

> No trial judge, therefore, should examine the report while the jury is deliberating since he may be called upon to give further instructions or answer inquiries from the jury, in which event there would be the possibility of prejudice which Rule 32 intended to avoid. Although the judge may have that information at his disposal in order to give a defendant a sentence suited to his particular character and potential for rehabilitation, there is no reason for him to see the document until the occasion to sentence arises, and under the rule he must not do so.

*Id*. The reason for this rule, the Court explained, was that a presentence report often involved the "ex parte introduction" of hearsay and so carried a greater potential for unfair prejudice than other sources of information. *Id*. This distinction may be of less concern today, however, in light of more liberal disclosure requirements.[5]

---

[5]When *Gregg* was decided, federal presentence reports were not subject to disclosure. *Gregg*, 394 U.S. at 492. In contrast, current Arizona rules require disclosure of the report, with some limited exceptions, and afford the defendant an opportunity to review and challenge its contents. *See* Ariz. R. Crim. P. 26.6, 26.8. *But cf. Scarborough*, 181 Ariz. at 286-87, 889 P.2d at 644-45 (distinguishing written presentence reports, "not necessarily" subject to disclosure and subject to Rule 17.4(g), from victim impact statements made orally in open court and not subject to Rule 17.4(g)).

11

¶17 Moreover, federal courts have since suggested the Supreme Court's holding may have been limited to those situations where, as in *Gregg*, there was truly "no reason" for a trial court to have seen the presentence report prior to the defendant's conviction.[6] In *United States v. Small*, for example, the Third Circuit noted:

> The Supreme Court was obviously not considering the retrial context when it wrote *Gregg*. Nor was it considering other similar circumstances when a judge may see a presentence report [about] a defendant before proceeding to try him. Such circumstances would occur if . . . the trial judge had presided and sentenced following conviction of defendant on one criminal offense and shortly thereafter was assigned to try the same defendant on other charges.

472 F.2d 818, 821 (3d Cir. 1972). Thus, "circumstances often may arise when the judge views a defendant's presentence report for legitimate purposes before trying him or presiding over his trial." *Id.* at 822. When they do, it "becomes necessary to balance [federal] Rule 32's objective of preventing even the possibility of prejudice with the administrative convenience, simplicity of procedure and prevention of delay implicit in having a single judge preside over a defendant's court appearances." *Id.*

¶18 In this case, the respondent judge clearly had a legitimate reason for reviewing a presentence report before sentencing Lopez on his kidnapping conviction in the previous proceeding. *See Smith v. United States*, 360 F.2d 590, 592 (5th Cir. 1966) (finding

---

[6]*Gregg* was not decided on constitutional grounds. *See Fiveash*, 156 Ariz. at 424, 752 P.2d at 513; *see also State v. Barnett*, 153 Ariz. 508, 509, 738 P.2d 783, 784 (App. 1987) (defendant has no due process right to change of judge who rejects guilty plea after reviewing presentence report).

12

suggestion that disqualification required because judge viewed presentence report "highly untenable in light of the decisions that a trial judge, who is familiar with a defendant's background by reason of having tried him in previous cases, is not thereby disqualified to try the same defendant in subsequent cases"); *United States v. Frezzo*, 563 F. Supp. 592, 595-96 (E.D. Pa. 1983) ("[Federal c]ourts have . . . explicitly held that where a judge is faced with a trial of a defendant whose presentence report he has read in a prior case[,] refusal to recuse is proper.") (collecting cases), *aff'd mem*., 734 F.2d 8 (3d Cir. 1984).

¶19 Similarly, in the context of disqualification for cause pursuant to Rule 10.1, Arizona courts have consistently rejected the argument that prejudice must be presumed, and disqualification required, because a judge is familiar with a defendant's background from presiding over that defendant's earlier trials. *See State v. Medina*, 193 Ariz. 504, ¶¶ 9-13, 975 P.2d 94, 99-100 (1999) (judge who presided over defendant's trial for aggravated assault and robbery properly presided over later capital murder case in which earlier convictions found to be aggravating circumstance); *State v. Munoz*, 110 Ariz. 419, 421, 520 P.2d 291, 293 (1974) (judge familiar with defendant's criminal history from many previous appearances not subject to disqualification for cause).

### Conclusion

¶20 In light of these authorities and our narrow construction of rules providing for peremptory challenges to judicial assignments, we conclude the respondent judge did not

exceed or abuse his discretion in denying Lopez's request for a change of judge pursuant to Rule 17.4(g). Accordingly, we deny relief.

 

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:

_____
JOSEPH W. HOWARD, Presiding Judge

_____
JOHN PELANDER, Chief Judge